# ORIGINAL

KUNTZ, J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

ORENSTEIN, M.J.

Sebastian Bongiovanni and Danielle
Liguori Bongiovanni

Plaintiff(s)

-against-

JPMorgan Chase Bank, N.A; PennyMac
Corp; PennyMac Loan Services, LLC;
Rosicki, Rosicki & Associates, P.C.

Defendant(s)

**Complaint for a Civil Case**

CV 19-3260

*(to be filled in by the Clerk's Office)*

Jury Trial:  ☒ Yes  ☐ No
*(check one)*

RECEIVED
MAY 3 1 2019
PRO SE OFFICE

## I.    The Parties to This Complaint:

1. Plaintiff, Sebastian Bongiovanni, office located at 1354 Richmond Road, Suite 200, Staten Island NY, 10304; Plaintiff Bongiovanni contact phone number is 718-979-2500 and can be reached at email ssbb4711@yahoo.com or by fax at 718-979-2577.

2. Plaintiff Danielle Liguori Bongiovanni, residing at 91 Alter Avenue, Staten Island NY, 10304; Plaintiff Liguori Bongiovanni contact phone number is 718-979-2500 and can be reached by email at dliguori75@gmail.com .

1

3. Defendant JPMorgan Chase Bank, N.A. corporate headquarters is located at 3415 Vision Drive, Columbus, OH 43219; Defendant Chase has many contact phone numbers including 1-866-550-5705.

4. Defendant PennyMac Corp. corporate headquarters is located at 6101 Condor Drive, suite 300, Moorpark CA 93021; Defendant PennyMac Corp. has many phone numbers including 1-818-878-8416.

5. Defendant PennyMac Loan Services, LLC corporate headquarters is located at 700 17th Street, suite 200, Denver CO, 80202; Defendant PLS has many phone numbers including 1-866-436-4766.

6. Defendant Rosicki, Rosicki and Associates, P.C. headquarters is located at 51 E Bethpage Road, Plainview NY, 11803; Defendant Rosicki has many phone numbers including 516-741-2585.

## II.    **Basis for Jurisdiction:**

7. The basis of Jurisdiction of this Complaint is subject to **28 U.S.C. 1332** and the amount in controversy exceeds 75,000 dollars.

8. Plaintiffs are individual citizens of the State of New York.

9. Defendant Chase Bank is incorporated in Delaware and has a principle place of business in the state of New York.

10. Defendant PennyMac Corp is incorporated in Delaware, operates their headquarters in California and does business in the state of New York.

11. Defendant, PennyMac Loan Services, LLC is incorporated in Delaware, operates their headquarters in Denver and California and does business in New York.

12. Defendant Rosicki, Rosicki ans Associates, P.C. is incorporated in New York, Operates their headquarters at 51 East Bethpage Road, Plainview NY 11803.

**III.    Statement of Claim:**

13. Plaintiffs bring this action against Defendants for various damages related to the initiating of Plaintiffs Residential Loan, the servicing of Plaintiffs residential Loan, the litigation of Plaintiffs Residential Loan thereafter; and the Defendants refusal to honor Plaintiffs contract as it pertains to Plaintiffs Residential Loan. Plaintiff moves this action forward on the Grounds (1) R.I.C.O. (2) Fraud, Consumer Fraud and (3) Deceptive Business Practice Act, Intrinsic Fraud (4) Unfair Trade practices (5) Breach of Fiduciary Duty and Co-Fiduciary Duty (6) Failure to supervise (7) Breach of Contract and Breach of implied covenant of Good Faith Lending and fair dealings (8) Violation of R.E.S.P.A. (9) Fair Debt Collection Act (10) Negotiating on Bad Faith

**Background: Loan, Banking and Litigation History as it pertains to this Case:**

14. **On or about early September, 2007,** Plaintiff(s) Sebastian Bongiovanni and his wife Danielle Liguori Bongiovanni did receive "Commitment letter" from J.P. Morgan Chase [Chase Bank] for financing a Residential Property located at 91 Alter Avenue, Staten Island NY, 10304. This Property was a "New" home built by Palarmo Construction Company. The commitment by the lender was for the parties to be financed at "fair market" rate.

15. **On or about November 13, 2007,** Plaintiffs was astounded to learn that on the eve of our closing date, Chase Bank would **ONLY** write the Loan at a rate of **9.99 percent** which included Defendant making a good salary and a Large Down Payment of about **312,500** or more than 30 percent of the Cost of the Home not including upgrades and taxes of about **950,000**. Plaintiffs, after learning of the rate; and under tremendous constraint to "Close" the Home Purchase Transaction, by "time certain" Date subject to the Purchase Agreement, moved forward with Chase Bank and closed on the mentioned home. Plaintiff borrowed **637,500** from Defendant Chase Bank.

**Please Note,** Plaintiffs were made assurances by Chase Bank that after **six months** of on time payments, Plaintiff would qualify for Lower Rate through an internal Program of the "Lender" for **ALL** Sub-Prime "Borrowers", which never occurred.

16. Plaintiffs submitted many requests to Chase Bank to "Lower" the interest rate as the parties made "On Time" Payments and Chase Bank never made any changes to Defendants loan while Defendant(s) were "current" on payments, as Chase Bank previously indicated.

17. The inappropriate and/or unsuitable and/or fraudulent practices of Chase Bank and many other Major Financial Banking Institutions, whereby taking advantage of many hard working Americans throughout the U.S. for the purpose of enrichment and greed, ultimately lead to a World Wide shut down and collapse of the Financial Markets.

18. **The financial crisis of 2008** played a significant role in the failure of thousands of businesses, declines in **household wealth** in the trillions of dollars and a downturn in economic activity leading to the Great Recession

19. It has been well documented that the bankers were directly responsible for the housing boom and collapse which sent the economy into a tailspin.

20. As the end of the days of Banks making big profits on prime mortgages neared, Financial Institutions needed a new revenue stream and they eventually found it, by creating **Sub-Prime Mortgages and Markets.**

21. Banks and all major Financial Institutions originated Mortgages to people, who previously would have qualified for Prime Rate Loans, by raising the Credit ceiling requirements for Prime-Rate Loans, whereby forcing Sub-Prime Loans on applicants as the **ONLY** means of making home purchases at that time a robust economy.

22. In addition, borrowers were intentionally given adjustable rates, so although it was a wonderful short-term profit-maker, it was a ticking time bomb for the long-term and in 2008, The Banking strategic Plan imploded.

23. In the aftermath and in the wake of these banking practices yielding tremendous profits for the Lender(s), whereby US foreclosures rate grew a staggering 81% in 2008 and rose 225% from 2006.

24. In order to protect the Banking system the Financial Intuitions successfully destroyed, The Government response spanned two administrations, firstly that of George W. Bush and then of Barack Obama.

25. The Emergency Economic Stabilization Act of 2008 was a law enacted in response to the subprime mortgage crisis. It authorized the Secretary of the Treasury to spend up to **$700 billion of American Tax Payer dollars** to purchase distressed assets, especially mortgage-backed securities, and supply cash directly into the Banking system or the Institutions that created the issue in the first place.

26. The Troubled Asset Relief Program (TARP) was signed into law by President Bush on October 3rd 2008. Although the TARP was originally authorized to use $700 billion of taxpayer money, under President Obama administration, this was later brought down to $475 billion through the Dodd-Frank Wall Street Reform and more importantly through the **Consumer Protection Act**.

27. The Government Accountability Office (GAO) published its findings in July 2011, further proving how gigantic the bailout truly was. The Article was titled "FEDERAL RESERVE SYSTEM: Opportunities Exist to Strengthen Policies and Processes for Managing Emergency Assistance," it details how the Federal Reserve gave more than $16 trillion to huge financial Institutions.

28. The Government sponsorship of these programs was first, to have American regain its confidence in the Banking system and more importantly to save the **homes of the victims** financially as a direct result of previous Banking Policies.

29. **Making Home Affordable Program** (MHA) was launched by the Treasury to help stabilize the housing market and struggling homeowners, the real victims, avoid foreclosure.

30. This program was designed to aid approximately seven to nine million eligible homeowners by lowering their monthly mortgage payments to a more manageable level and/or forgiving Principle Debt of Borrowers with negative Equity in their Home Investments. The Obama administration allocated $75 billion to this program.

31. Since its inception, MHA has helped homeowners avoid foreclosure by providing a variety of solutions to modify and/or refinance their mortgages and/or lower Principle balances.

32. **The Home Affordable Modification Program** (HAMP) is a government program that was introduced in 2009 in response to the subprime mortgage crisis as well.

33. HAMP was established in concert with the **Hardest Hit Fund Program** (HHF) under the TARP, a part of the Emergency Economic Stabilization Act of 2008

**Chase Banks refuses to comply with Government sponsored programs timely, to boost profits and to hold consumers tied to sub-prime rates as long as possible:**

34. Plaintiff while making on time payments with Chase Bank repeatedly asked/requested for Modification as Plaintiff income could not support sub-prime payments. Plaintiff was repeatedly told by Chase Bank representatives, Plaintiff may **ONLY** be allowed to modify Plaintiffs loan upon Plaintiff being behind in payments. In this instant Defendant Chase Bank created a business plan to take as much money as possible from clients or eat away at clients saving and only giving government support when Clients where completely insolvent.

35. Plaintiff in late 2009, as many Americans fell behind in payments of their home loan and requested loan modification. Defendant Chase banks sent Plaintiff modification Documents and denied Plaintiff loan modification more than three times over more than **eighteen month period**.

36. Finally **on or about October 1, 2011**, Plaintiffs entered into Loan Modification which was extremely biased against Plaintiffs in nature and/or tremendously advantageous agreement for Chase Bank.

37. The Loan Modification was based on the following calculations;

    A.  Original Loan Principle Balance amount **637,500.00**

    B.  Modified Loan Principle Balance amount **727,288.58**

    C. Loan Payments Due prior [46x 5594.05] or **257,326.00**

    D. **Loan Payments paid by Plaintiff** was **167,538.00**

    E. arrearages owed by Plaintiff prior **89,788.00**

    F. Modified Loan Deferred Balance of **128,900**

    G. Amount of credit(s) of Plaintiff prior payments toward Principle Balance before modification....**0**

**Please note,** Defendant Chase Bank gives no credit to Plaintiffs Principle Balance which should have reflected some reduction from the **167,538.00** in payments made by Plaintiffs. Plaintiff thereafter work hard to try and rebuild their financial life. Financial Markets continued to remain unsettled and defendant lost many months of work throughout 2011 and 2012.

**Chase Bank forced to settle with homeowners and Plaintiff:**

38. **Chase Bank fined by the Federal Government for many Banking infractions:** The hammer comes down on Big Banks and Chase Bank finally gets punished for bad business practices, as follows:

    A. **In February 2012 JPM Chase agrees to pay 5.3 billion Dollars** in restitution for mortgage fraud implemented by the Federal government which included damages caused by Chase bank for the following (1) robo-signing paperwork (2) Banking finance abuse and unethical lending practices (3) refusing loan Modifications and (4) abusing modification terms and practices. **More importantly**, the 5 billion dollars would NOT be given to the Federal Government but must be placed in a "pool" whereby JPM Chase was directed to place these funds to help JPM Chase Clients in the form of Debt reduction.

B. On or about **February 9, 2012**, US attorney General Eric Holder fined JPM Chase and four other intuitions 25 Billion Dollars, as stated above JPM Chase share would be 5.03 Billion of which <u>4.2 Billion dollars came in the form of relief to be paid by Chase Bank Directly to home owners</u> whom had loans with Chase. This pool of money was set aside and would be allowed to only be used to help home owners, your Plaintiffs, reduce Debt on the bad loans Chase placed.

C. In 2014 Chase Bank again is fined several billion dollars for not modifying loans correctly; Chase Bank has been guilty of banking Fraud for more than a decade.

39. Subject to the agreement with the Federal Government, Defendant Chase Bank corrects Plaintiffs modification. Plaintiff's home in 2013 was estimated to be worth about 600,000 dollars. Plaintiff works with Pamela grant, Chase Bank Modification specialist for a period more than 9 months. Plaintiff is informed by Pamela Grant, Plaintiff has been approved for a modification which was constant with past payments made by Plaintiff, included debt forgiveness and which would allow Plaintiff to keep their home, get back on track, allow Plaintiff to maintain a loan consistent with the past payments Plaintiff paid Defendant Chase Bank and consistent with what Plaintiffs home was worth, at the time. **More importantly** by Defendant Chase Bank approving Plaintiff a 'Modification Agreement with debt forgiveness, Defendant Chase Bank would be allowed to "dip" into the pool of aid set aside for homeowners within the **2012 JPM Chase agreement** with the Federal Government. In short, any saving Plaintiff received was paid for by the "pool" of money set aside to help homeowners.   [Please see **Ex. 1**, Chase Bank Modification approval Letter Dated July 11, 2013]

**<u>Defendant Chase Bank finds new way to steal Government Aid from consumers and partners with Penny Mac Loan Services, LLC to help in the "New" Fraud Scam</u>:**

40. Plaintiff upon being approved for the "new" modification makes the first of three trial payments with Defendant Chase Bank.

41. After Plaintiff makes first trial payment, Defendant Chase Banks transfers Plaintiffs mortgage to Defendant PennyMac Loan Services, LLC. Plaintiff is informed by Chase Bank, Plaintiffs Loan service provider has changed, Plaintiff is not informed by Chase Bank that the "owner" of Defendants Note was changed, only that the loan service provider has changed. Upon Plaintiff being informed of the suspicious loan transfer, Plaintiff immediately contacts Chase Bank to make sure Plaintiff modification would be transferred correctly. Plaintiff also contacts Penny Mac Loan Service, LLC [PMLS] to inform PMLS of Plaintiff agreement with Chase Bank. Plaintiff was assured by both Defendants Plaintiff loan will be transferred correctly.

42. Plaintiff makes trial payment two and three with Defendant PMLS. Plaintiff receives finalized modification from PMLS by FedEx; and Plaintiff properly signs agreement and returns back to PMLS. Defendant PMLS receives returned contract signed by Plaintiff; and Plaintiff thereafter receives signed contract back from Defendant PMLS, the parties Contract becomes fully executed. [Please see **Ex. 2**. Signed 2014 Modification Contract]

43. Plaintiff asserts Defendant PMLS never had intentions of honoring agreement signed by the parties. PMLS continued to report wrong Principle Amounts owed on Plaintiff credit report, thereafter. Plaintiff monthly mortgage Statement did represent correct principle balanced owed of **547,356.17**, subject to the 2014 contract signed by the parties. Upon Plaintiff Bongiovanni contacting PMLS and informing Defendant PMLS of the issue as it pertains to Plaintiffs credit report indicating wrong amounts owed by Plaintiff, Defendant PMLS assured Plaintiffs the issue will be corrected. Defendant PMLS never corrected Plaintiffs Credit report as PMLS continued to report incorrect amounts owed by Plaintiff on Plaintiffs credit report.

44. Plaintiff health deteriorated requiring Plaintiff Bongiovanni to be hospitalized. Plaintiff again fell behind on mortgage payments. In addition to Plaintiff Bongiovanni being out of work, Plaintiffs were continually frustrated at Defendant PMLS, as PMLS continually reporting wrong amounts owed on Plaintiff Home Loan, on Plaintiffs Credit reports.

**The Appearance of Defendant Penny Mac Corp. and Defendants Rosicki,
Rosicki and Associates:**

45.  **On or about January 7, 2016** Defendant PennyMac Corp files Foreclosure
Action against Plaintiff. Defendant PennyMac Corp [PM] files summons and
complaint in the Richmond County Supreme Court under Index No. 135011/2016
which is an electronic filing Case. PM dockets summons and complaint as docket
**No. 1**. The Richmond County Supreme Court electronic filing system is public
information and Plaintiff for the purpose of this Complaint will indicate items
within that docket system to be presented to this honorable Court as the need
arises.

46. Within Defendant PM summon and complaint, Defendant PM attached the
2014 contract signed by the parties. Defendant PM misrepresents the principle
balance owed by Plaintiff in the action by more than **240,000 dollars**.

47. Defendant PM is represented by Defendants Rosicki, Rosicki and Associates
[RRA], Defendants RRA files Certificate of Merit within the Richmond County
electronic Filing system Docket **No. 2**; and further affirms Defendant PM
Summons and Complaint as it pertains to Plaintiffs contract to be correct.
Defendant RRA further file Certificate of Merit without reviewing the attached
contract signed by the parties and further affirms the principle balances owed
incorrectly, on behalf of Defendant PennyMac Corp.

48. On **March 16, 2016**, the first appearance in the above mentioned Foreclosure
Action, Index No. 135011/2016, Plaintiffs appear and Plaintiff Bongiovanni
immediately informs Defendant PennyMac Corp Council, Defendant RRA, that the
stated Principle balance within the Summons and Complaint filed with the Court
is not stated correctly. Plaintiff was offered a "New" Modification subject to the
inflated principle balance of more than 240,000 dollars; meaning Defendant
PennyMac Corp was attempting to collect amounts far exceeding what the stated
contract signed by the parties in 2014 indicated; and further the amounts
Defendant PennyMac Corp was requesting to be paid exceeded the amount owed
by more than **240,000 dollars.**  Plaintiff Bongiovanni indicating to the Court
referee and Defendant RRA that Plaintiffs wished to accept the modification but
requested the principle amounts be corrected to properly indicate the 2014
signed contract by the parties.

49. Plaintiffs were directed to contact Defendant RRA mitigation department whereby Defendant RRA mitigation Department would contact PennyMac Corp and resolve issue. Plaintiff within email communication did contact Defendant RRA mitigation Department; Plaintiff did email the signed Contract between the parties and request Defendant PennyMac to correct principle balanced owed and requested that Plaintiff would except the modification offered subject to the 2014 contract signed by the parties with the correct principle balance indicated. [Please see **Ex. 3**, emails]

50. Defendant PennyMac and Defendant RRA rather than correct the mistake of the incorrect Principle balances owed by Plaintiff, attempted to cajole, manipulate and defraud Plaintiff into believing the signed 2014 contract actually indicated amounts far exceeding what they stated amounts within the contract represented. Defendants attempted to convince your plaintiff into accepting a modification within incorrect principle balances about **240,000 dollars** more than was actually owed. In short Plaintiff owed **547,356.17** plus any back payments and escrow owed verse what Defendant PennyMac Corp stated as owed or **778,787.01** plus any back payments owed and what Defendant RRA certified as owed. Defendant's fraudulently attempt to collect about 240,000 dollars from Plaintiff not contractually owed. Defendants, upon being notified by Plaintiff the amount was incorrect subject to the signed 2014 contract, rather than make correction continued to litigate and attempt to convince Plaintiffs into believing the signed 2014 contract allowed Defendants to collect amounts indicated within previous contracts. Lastly, Defendant Chase Bank was already credited with any government incentives afforded by the federal Government, as such, Defendants attempted and consorted steal back government aid afforded Plaintiff.

## Defendants Negotiated in Bad Faith:

51. Defendant PennyMac Corp through Council negotiated in Bad Faith during the entire Foreclosure action and were only willing to offer Plaintiff a modification with tremendously overstated principle balance not reflective of the 2014 sign contract between the parties. Defendant PennyMac and their Council as officers of the Court may not engage in deceptive or fraudulent activity whereby unsuspecting homeowners may get scammed into accepting to pay money far exceeding what is contractually owed.

Understandable Defendant RRA, as Defendant PennyMac's council, wants to represent their clients well, yet, as officers of the Court Defendant RRA may not engage in activity that reflects deceit or deception for the purpose of unjustly enriching their clients or may not help their clients collect money not contractually owed. More importantly, Defendant PennyMac Corp may not demand money not contractually owed by Plaintiff.

**Plaintiff offers to pay loan in full – Breach of Contract:**

52. On or about **December 5, 2017 thru Mid-2018**, Plaintiff in the hopes of resolving the Foreclosure Action between Plaintiff and Defendants, engaged outside lenders and accept offers to sell Plaintiffs family condominium asset located in Kings County (Plaintiff has copy of sale contract with buyer to purchase family condo apartment, which can be presented upon request). Plaintiff was offered a contract to sell Plaintiffs condominium whereby using the proceeds together with money from an outside lender to pay Defendant PennyMac in full subject to the contract signed by the parties. The amount offered Defendant PennyMac included principle, back interest and escrow balances to be paid in full. Defendant PennyMac through new council of Blank Rome refused Plaintiffs offer. Defendant PennyMac may not hold Plaintiff life, Plaintiffs credit rating and Plaintiff home hostage whereby refusing payment in full subject to the terms and condition of the signed contract between the parties lawfully. Defendant PennyMac may not hold Plaintiffs credit rating hostage whereby demanding payment on monies not contractually owed between the parties. **In early 2019**, once again Plaintiff requested Defendants to except payment in full and was refused. Defendants may not refuse payment in full by Plaintiff subject to the contract executed by the parties or ask consumers to pay amounts far exceeding what is contractually owed. Defendants may not take advantage of consumers experiencing financial hardship requiring payment of amounts not contractually owed. Defendant PennyMac does NOT own Plaintiffs Note and is not Plaintiffs loan Service provider. Defendant PennyMac is nothing more than a buffer between Defendant Chase Bank, Defendant PennyMac Loan Service LLC and Defendant Rosicki, Rosicki and Associates. These defendants create a consortium or enterprise for the purpose of deception, bad business tactics and fraud to bolster Defendants profit margins and unjust enrichment.

**Chase Bank is owner of Plaintiffs Note:**

53. On or about **December 14, 2017**, Plaintiff was notified by Defendant JPM Chase, that JPM Chase Banks is the "investor" of Plaintiff note, not Defendant PennyMac and not Defendant PennyMac Loan Service LLC. [Please see **Ex. 4**, Chase Bank letter]

54. Astoundingly, PennyMac Corp, initiates Foreclosure Action against Plaintiff, alleges principle balances not remotely close to the amounts contractually owed by Plaintiff, Refuses payment in full by Plaintiff and is not the owner of Plaintiffs Note and is not the service provider of Plaintiffs Note. More importantly, Defendant Rosicki, Rosicki and Associates certifies legal opinion of Defendant PennyMac claim, without review of the underline Loan documents, contracts or other important legal documents required.

**Chase Bank refuses Loan Notes and Transaction Notes upon request by Plaintiff and Chase Bank has fired all key personal associated with Plaintiffs Loan Modification and the loan modifications of other Homeowners**:

55. On or about **March 20, 2018** Plaintiff faxes letter dated March 20, 2018, Plaintiff request Defendant Chase Bank to provide Plaintiff with information as it pertains to Plaintiffs Loan with regards to whom owns Defendants Note, whom is the "investor" of Plaintiffs Note, whom is the current service provider of Plaintiffs Loan; Defendant Chase Bank refused to supply Plaintiff with Loan information and directed Plaintiff to Defendant PennyMac Loan Services LLC. [Please see **Ex. 5**, Letter dated March 20, 2018 and Defendant Chase Bank response letter dated March 22, 2018]

56. On or about **March 23, 2018,** Plaintiff faxes letter dated March 23, 2018 requesting information with regards to Plaintiffs loan. Plaintiff request Defendant Chase Bank to send Plaintiff a copy of Plaintiffs **loan notes** and **all loan transactions** from Plaintiff loan inception in 2007 thru 2014. Defendant Chase bank refused and directed Plaintiff to submit request to Plaintiffs new loan service provider Defendant PennyMac Loan Services, LLC [Please see **Ex. 6** Letter to Chase Bank Dated March 23, 2018 and Chase Bank Response letter to Plaintiff]

57. On or about **March 23, 2018**, Plaintiff send second Letter on that day request Defendant Chase Bank provide Plaintiff with Loan information whereby requesting information concerning "all loan record notes and all loan transaction notes; Defendant Chase Bank once again denies Plaintiff loan information and directs Plaintiff to again contact Defendant PennyMac Loan Services LLC.

58. Plaintiff did contact Defendant PennyMac Loan Services LLC on or about **December 11 2017,** whereby Plaintiff request a copy of all servicing Notes in their possession and secondly requested information regarding whom the current "investor' owner of Plaintiff note. Defendant PennyMac gave Plaintiff copies of notes related to Plaintiff notes beginning in 2014; in short all loan record notes and all transaction notes from 2007 thru 2014 magically disappeared, as such, Plaintiffs Loan history, servicing notes, modification notes and other pertinent information with regards to Plaintiff loan is intentionally hidden.

59. Upon Plaintiff Bongiovanni contacting Defendant Chase Banks "risk" department team on more than **25** occasions throughout these matters, Plaintiff Bongiovanni was informed Pamela Grant and her entire modification team was released from employment and Defendant Bongiovanni was refused a Copy of Loan Notes and Records; Defendant Chase Bank first discontinues relationship with the modification team whom work feverishly with homeowners with the hopes of disbursing the **4.2 billion dollars** awarded indirectly to Chase Banks clients; whom have been deceived by Chase Bank, refused modifications by Chase Bank and whom have been tremendously harmed financially by Chase Bank in years prior to the 2012 Federal Settlement with Chase Bank; and further Defendant Chase Bank finds innovative way to get rid of all the servicing notes associated with the modification team.

60. Defendant Chase Bank removes all the servicing notes and other evidence, creates a "perfect storm" environment for Defendant PennyMac Loan Services LLC and their legal counsel, Defendants Rosicki, Rosicki and associates, the ability to become predators to steal or attempt to steal Government aid awarded to past Chase Bank Clients. As in this Case, Plaintiff is left to fight big bank without proper loan records and against large law firms whom are experts at navigating difficult law; Plaintiff as many common people who do not have the ability to pay for legal representation are left open to defraud by Defendants whom are predators.

## IV.    Cause of Action Claims against Defendants:   First Cause of Action against Defendants Racketeer Influenced & Corrupt Organizations Act:

61. Plaintiff charges defendants violated **RICO, 18 U.S.C. 1962(c),** by engaging in an enterprise to create fraudulent mortgage assignments and collect improper fees and/or create inflated principle balances not contractually owed by Plaintiff and/or steal government aid awarded to consumers, your Plaintiff, through mail and wire fraud. Defendants are guilty of Fraud, manipulation of loan documents, destruction of loan documents, extortion of their clients through manipulation, breach of fiduciary duties, theft of government funds and attempting to collect money not contractually owed.  RICO "is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity," and it "does not cover all instances of wrongdoing." *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006). Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or **collection of unlawful debt**."Plaintiffs were directly harmed these acts.

62. The RICO statute defines an "enterprise" to include "any individual, partnership, corporation, association, or other legal entity..."see 18 U.S.C. § 1961(4). The Supreme Court held in *Boyle* that an association-in-fact enterprise under RICO must have a "structure," although the jury need not receive an instruction in these terms. *Boyle v. United States,* U.S., 129 S.Ct. 2237, 2241, 173 L.Ed.2d 1265 (2009). The Court wrote that an association-in-fact enterprise must have "at least three structural features: **a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."** *Id.* at 2244. However, it clarified that RICO enterprises are not limited to "business-like entities" and that they need not have a hierarchical structure or a "chain of command." *Id.* at 2246; *cf. Limestone Dev. Corp. v. Vill. of Lemont, Ill.,* 520 F.3d 797, 804 (7th Cir.2008).

63. **In this case**, Defendants Chase Bank, PennyMac Corp, PennyMac Loan Services and Rosicki create a consortium or enterprise; the **purpose** of the enterprise is first, to distribute government aid to consumers who receive modification of their home loan, which is paid for by the Federal Government "pool" of money placed in reserve; second, during the Modification "trial period" Defendants create a "bait and switch" scam whereby switching consumers from one service provider to the next; upon switching the consumer, the enterprise attempts to change the dynamic of the promised aid whereby stealing back the promised aid from the consumer;

Aid previously paid for by the "pool" of funds set aside by the Federal Government in the **2012 settlement with Chase Bank**. The **Relationship** between the parties of the enterprise are clear and decisive; Each member of the consortium has a unique responsibility within the transaction; First, Chase initiates the promise (the bait) of the "modification" which includes the Government aid debt reduction; Defendant PennyMac is the buffer between Chase Bank, Defendant PennyMac Loan Services and Defendant Rosicki; Chase Bank, through Defendant PennyMac Corp., unloads Plaintiffs loan and loans of other consumers to Defendant PennyMac Loan Services LLC, as the new service provider of Plaintiffs loan. During the modification process, in effect, during the critical modification trial period, consumers are vulnerable to deception, whereby Defendant PennyMac Loan Services attempts to "flip" or (switch) Plaintiff or attempts to retract previous promised saving within the new modification and/or finalizes modification contracts using language that could be construed in various advantageous ways, favoring Defendants. Upon Plaintiff or other the Consumers realizing they are in a scam, Defendant Rosicki creates a fraudulent legal opinion and attempts to legitimize Defendants enterprise corruption scam. The **longevity** of the scam exists throughout the life cycle of the allocation of the **4.2 billion dollars** in government aid and other government aid programs being disbursed by Defendant Chase Bank.

64. To state a § 1962(c) claim, a plaintiff must "demonstrate (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Rao v. BP Prods. N. Am., Inc.* 589 F.3d 389, 399 (7th Cir.2009).

65. As stated above within item No. 63, the conduct of Defendants concretely indicates Deception, Defendant Chase Bank conduct of "placing the bait on the hook", then requires their co-defendants to complete the deceptive practice. The pattern of (1) Defendant Chase Bank contacting Clients, Promising Modification agreements, (2) transferring tranches of loans or bundles of loans all of which are in the middle of the "trial" process within the promised modification; and lastly the manipulation of all the same customers whereby cajoling customers into reworking the promised aid away from the consumer immediately or over time.

**Second cause of Action against Defendants Fraud, Consumer Fraud:**

66. In the United States, common law generally identifies nine elements needed to establish fraud: (1) a representation of fact; (2) its falsity; (3) its materiality; (4) the representor's knowledge of its falsity or ignorance of its truth; (5) the representor's intent that it should be acted upon by the person in the manner reasonably contemplated; (6) the injured party's ignorance of its falsity; (7) the injured party's reliance on its truth; (8) the injured party's right to rely thereon; and (9) the injured party's consequent and proximate injury. See, e.g., *Strategic Diversity, Inc. v. Alchemix Corp.*, 666 F.3d 1197, 1210 n.3, 2012 U.S. App. LEXIS 1175, at *25 n.3 (9th Cir. 2012) (quoting *Staheli v. Kauffman*, 122 Ariz. 380, 383, 595 P.2d 172, 175 (1979)); *Rice v. McAlister*, 268 Ore. 125, 128, 519 P.2d 1263, 1265 (1975); *Heitman v. Brown Grp., Inc.*, 638 S.W.2d 316, 319, 1982 Mo. App. LEXIS 3159, at *4 (Mo. Ct. App. 1982); *Prince v. Bear River Mut. Ins. Co.*, 2002 UT 68, ¶ 41, 56 P.3d 524, 536-37 (Utah 2002).

67. The **first common law fraud element** is the representation of a fact. "A representation within the meaning of the law of fraud is anything short of a warranty, which proceeds from the action or conduct of the party charged, and which is sufficient to create upon the mind a distinct impression of fact conducive to action." *St. Louis & S. F. R. Co. v. Reed*, 37 Okla. 350, 355, 132 P. 355, 357 (1913); see BLACK'S LAW DICTIONARY (9th ed. 2009) (defining "representation" as "[a] presentation of fact – either by words or by conduct – made to induce someone to act"); In this Case, Defendant Chase Bank Promised Plaintiff Modification Agreement which included government sponsored aid and Debt reduction. Plaintiff was notified by Mail of the Trial Approval and Plaintiff signed contract indicating the finalization of that fact.

68. The **second common law fraud element** is the falsity of the representation. "A false representation is the cornerstone to an action in fraud." For example, if an employee of a bank represents he will modify an individual's mortgage payment schedule and not report any late payments made pursuant to the modified plan to credit reporting agencies but then neglects to modify the schedule, the representation was false. Blau v. Am.'s Servicing Co., No. CV-08-773-PHX-MHM, 2009 U.S. Dist. LEXIS 90632 (D. Ariz. Sept. 28, 2009).

69. In this instant, Defendant Chase Bank promises Plaintiffs modification with key elements including debt reduction, considerations of past payments and consideration of past high rates of payments previously made; Defendant Chase Bank sells Plaintiff mortgage during the key "trial payment" period whereby the new provider attempts to cajole Plaintiffs into believing the signed agreement between the parties indicate different elements then original agreed upon. It must be strongly emphasized Chase Bank remains Plaintiffs note holder and retains interest within the subject Note.

70.  The **third common law fraud element** is the materiality of the representation. "A representation or concealment of a fact is material if it operates as an inducement to the [other party] to enter into the contract, where, except for such inducement, it would not have done so." In this instant, Plaintiff, at the time the modification was offered, Plaintiffs home was worth about 600,000 dollars and within the promise of the "new" modification, Plaintiff would owe Principle balances less than the value of the home; meaning Plaintiff would own a home and not owe more debt on the home verse what the home was worth or had some positive equity.

71. The **fourth common law fraud element** requires the representor to either have knowledge of the representation's falsity or else be reckless in his ignorance of its truth. "False representations made recklessly and without regard for their truth in order to induce action by another are the equivalent of misrepresentations knowingly and intentionally uttered." *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 974, 938 P.2d 903, 917 (1997) (quoting *Yellow Creek Logging Corp. v. Dare*, 216 Cal. App. 2d 50, 55, 30 Cal. Rptr. 629, 632 (Cal. Ct. App. 1963); see *Anderson v. Knox*, 297 F.2d 702, 720-21, 1961 U.S. App. LEXIS 3058, at *55-56 (9th Cir. 1961) (reasoning that the "knowledge" requirement is satisfied if it is shown that the representations were made with reckless disregard for their truth or falsity); In this instant, Defendant Chase Bank sole purpose to transfer Plaintiffs loan to Defendant PennyMac Loan Services, LLC was to give Defendant PennyMac Loan Services, LLC an opportunity to rework Plaintiff loan to more favorable terms than originally promised; in doing so, Defendant Chase Bank would first take credit within the **2012 Federal Agreement** and "dip" into the pool of money set aside for homeowners (in essence being paid in full for any saving past to the consumer); and secondly steal that savings back from the consumer, your Plaintiffs.

72. The **fifth common law fraud element** is the representor's intent to induce the other party to act in accordance with the representation. "[T]he fundamental character of fraud is the communication of a misimpression to induce another to rely on it." *Estate of Schwarz v. Philip Morris, Inc.*, 206 Or. App. 20, 39, 135 P.3d 409, 422 (Or. Ct. App. 2006). "An unperformed promise does not give rise to a presumption that the promisor intended not to perform when the promise was made." *Bash v. Bell Tel. Co.*, 411 Pa. Super. 347, 361, 601 A.2d 825, 832 (Pa. Super. Ct. 1992) (quoting *Fidurski v. Hammill*, 328 Pa. 1, 3, 195 A. 3, 4 (1937)). However, "[a] defendant who acts with knowledge that a result will follow is considered to intend the result." *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 578, 2001 Tex. LEXIS 61, at *16 (2001); *Elizaga v. Kaiser Found. Hospitals*, 259 Ore. 542, 548, 487 P.2d 870, 874 (1971). In this instant, Defendant Chase Bank prays on people with financial hardships whom are desperate for help in "modification" terms within their home. These people of also vulnerable more so to the "bait and switch" scam. Plaintiff loan to market value or LMV was upside down; meaning Plaintiff owed more money than the home was worth; this environment was created by Big Banks and your defendants; as such the Federal Government first created programs which would incentive home owners to keep their homes whereby allowing home owners aid and reducing balances owed constant or less than the home value or positive LMV (loan to market value). Conversely Defendant Chase Bank was charged  in Federal Court for investment banking crimes related to not abiding by Government sponsored Programs. Within the 2012 Federal Settlement, Defendant Chase Banks was Fined 4.2 Billion dollars and this "pool" of money was once again placed to help Defendant Chase Bank Consumers, your Plaintiffs. Once again Chas Bank finds ways to commit Fraud.

73. The **sixth common law fraud element** is the injured party's ignorance of the representation's falsity. If a plaintiff knows a representation is false, a cause of action for common law fraud will not exist. *Lettunich v. Key Bank Nat'l Ass'n*, 141 Idaho 362, 368, 109 P.3d 1104, 1110 (2005). There can be no doubt that Plaintiff in this case was completely unaware the representation by Defendant Chase bank was false and entered the agreement with Defendant Chase Bank under the "trial" payment Plan with good faith.

74. The **seventh common law fraud element is** the injured party's actual reliance on the truth of the representation. "Actual reliance occurs when a misrepresentation is 'an immediate cause of a plaintiff's conduct, which alters his legal relations,' and when, absent such representation, 'he would not, in all reasonable probability, have entered into the contract or other transaction.'" Engalla, 15 Cal. 4th at 976, 938 P.2d at 919 (quoting *Spinks v. Clark*, 147 Cal. 439, 444, 82 P. 45, 47 (1905). Markedly, "it is not logically impossible to prove reliance on an omission." *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1093, 858 P.2d 568, 574 (1993). Indeed, a plaintiff "need only prove that, had the omitted information been disclosed, one would have been aware of it and behaved differently." *Id.*

75. In this instant Plaintiff, the injured party, would not have continued the relationship with Defendant Chase Bank or signed the contract or entered into the "trial" period of the modification without the presumption the offer by Chase Bank was genuine. Plaintiff would have exercised other options including accepting other government incentives.

76. The **eighth common law fraud element** is the injured party's right to rely on the representation. A party does not have a right to rely on a representation if she is aware the representation is false, not enforceable, or not made to her. See *Lininger*, 23 Ariz. App. at 268, 532 P.2d at 540 (holding that a party did not have the right to rely on a representation because he "was aware that the instrument had to be approved by counsel for one of the parties, reduced to writing to comply with the Statute of Frauds and signed by the parties"). In this instant, Plaintiff was promised permanent modification upon completing the Trial "three" payments. Plaintiff relied on this information to be true; Plaintiff made the three payments and further Plaintiff signed contract with Defendant(s).

77.  The **ninth and final common law fraud element** is proof of the injured party's consequent and proximate injury. "It is of the very essence of an action of fraud and deceit that the same shall be accompanied by damage, and neither damnum absque injuria nor injuria absque damnum by themselves constitute a good cause of action." *George Hunt, Inc. v. Wash-Bowl, Inc.*, 348 So. 2d 910, 912, 1977 Fla. App. LEXIS 15920, at *5 (Fla. Dist. Ct. App. 1977) (quoting *Stokes v. Victory Land Co.*, 99 Fla. 795, 802, 128 So. 408, 410 (1930));

78. In this instant, Defendants Chase Bank and Defendants PennyMac Loan Servcies LLC have continually refused to honor the 2014 agreement signed by the parties; Defendant PennyMac Loan Services has continually attempted to defraud Plaintiffs of government promised aid and incentives due Plaintiff; Defendant continually indicates Plaintiff owes balances far exceeding what was contractually owed; Plaintiffs Credit rating has been held hostage by Defendants and have had negative reporting on Plaintiff Credit rating the last five years; Plaintiff has suffered mental duress and mental hardship for more than five years; Defendants continually are holding Plaintiffs home, Credit rating and life hostage as these dispute stands today.

### Third Cause of Action Deceptive Business Practices

79. In New York, General Business Law section 349 (NY GBL Sec. 349) bars deceptive business practices in the conduct of any business, trade, or commerce. The law is broadly construed and applies to many economic activities. The law empowers consumers and gives them an even playing field in their disputes with businesses that are generally in a superior position. According to the Court of Appeals of New York, the highest court in the state, NY GBL 349 has three elements: 1) the act or practice was consumer-oriented; 2) the act or practice was misleading in a material respect; and 3) the plaintiff was injured as a result of the deceptive act or practice. In a deceptive business practice case, the plaintiff does not need to prove that the defendant intended to mislead the plaintiff.

80. A claim for deceptive business practices can result in multiple avenues of recovery for a plaintiff and increased civil and criminal liability for a defendant. The statute permits recovery of up to **three times** the plaintiff's damages. A court may also award attorneys' fees to persons injured by deceptive trade practices in New York. In addition, the attorney general may bring action against any individual, corporation, or association for deceptive acts or practices. Yet, a claim against an individual and organization for deceptive business practices may be not a valid claim for the following reasons: failure of plaintiff to file suit within three years of the last deceptive act, the act or practice does not affect the public consumer, the act is not misleading, plaintiff was not injured, or the violation did not occur in New York.

21

80. In this Case, Defendants bad acts was Consumer-oriented; as Plaintiff is a consumer of Defendants. Defendant's Bad acts has been and continue to be misleading and deceptive towards Plaintiffs. Plaintiff was harmed and continues to be harmed by Defendants bad acts of manipulation and deception. In this Case, Defendants main objection was to mislead Plaintiffs but is not an element of this pleading.

81. Plaintiff continues to be hurt by Defendants and the three year statue for bring this charge is within the statutory limits. Defendant's fraud and deception is still ongoing and Plaintiff remains harmed by Defendants. Defendants are attempting to steal about 240,000 dollars or collect money not contractual owed by Plaintiff in the amount of more than 240,000 dollars; as such, Plaintiff should be entitled in damages against Defendants of three times 240,000 dollars.

## Intrinsic Fraud

82. Intrinsic Fraud is an intentionally false representation (lie) which is part of the fraud and can be considered in determining general and punitive damages. In this Case Plaintiff charges Defendant(s) with creating an environment with the intent to commit Fraud and this deception was intentional.

## Forth Cause of Action Unfair Trade Practices:

83.  Deceptive trade practice. Any false, falsely disparaging, or misleading oral or written statement, visual description or other representation of any kind made in connection with the sale, lease, rental or loan or in connection with the offering for sale, lease, rental, or loan of consumer goods or services, or in the extension of consumer credit or in the collection of consumer debts, which has the capacity, tendency or effect of deceiving or misleading consumers. In this Case Defendants have engage and continue to engage in deception and/or misleading the consumer as indicated above.

## Fifth Cause of Action Breach of Fiduciary Duty and Breach of Co-Fiduciary Duty:

84. As outlined in 29 U.S. 1104, Generally speaking, the relationship between a lender and a borrower, absent special circumstances, is merely that of creditor-debtor. However, the policies in favor of imposing fiduciary duties on lenders in certain circumstances have been implicitly, if not expressly, recognized by courts as deviating from the general rule. For example, a lender may be deemed a fiduciary when it takes control of a borrower. A lender may also be deemed a fiduciary when "moral, social, domestic, or purely personal relationships" are shown to exist between the parties. Indeed, fiduciary status is probable when a lender undertakes to perform a task on behalf of its borrower, thereby triggering the fiduciary principles that stem from the law of agency.

85. In this instant Defendant Chase Bank is or has a fiduciary Role in a "special circumstance" as the distributor of first, Government sponsored relief programs directed at the consumer for the purpose of saving their home; and second as the distributor of the **JPMorgan Chase 2012 Federal Lawsuit Agreement** whereby Defendant Chase Bank is in charge of 4.2 Billion dollars, the "pool" of money placed in escrow. Defendant Chase bank has the responsibility as fiduciary of these mentioned funds, to distribute funds back to the Consumer in the form of Debt reduction and other benefits; whereby Defendant Chase Banks consumers get compensated for past digressions of Defendant Chase Bank as it pertains to bad lending tactics and other serious infractions.

86. As outlined in 29 U.S. 1105, Defendants PennyMac, PennyMac Loan Servcies LLC and Defendants Rosicki are all Co-Fiduciaries and ultimately have the responsibility to ensure the save transfer of these funds to the designated consumers safely and fairly; In this instant Defendants concretely and uniformly work in concert with each other to in fact ensure Plaintiff and other consumers do not get the entitlements correctly or look to take back government aid pointed at the consumer and your Plaintiff. In doing so, Defendants look to bolster their own revenue streams whereby placing the government savings in their own pockets verse the pockets of the consumers and your Plaintiff.

## Duties of Fiduciaries:

87. Duties of Fiduciaries are to act fairly, to act in good faith and have fair dealings. There are literally hundreds of ways in which fiduciaries may breach the duties correlative to their special status. Among the most common breaches are the following: self-dealing (i.e., through conflict of interest or reaping of extra profits); usurpation of business or corporate opportunity; misappropriation of funds or property; neglect, imprudence, or want of skill (e.g., failure to administer trust property as prudent administrator, failure to properly diversify ERISA plan investments, or improper reliance on professionals); failure to act in another's best interest; misrepresentation/omission as to a statement of fact (e.g., financial condition/statement of affairs); inducement; breach of an assumed duty (e.g., to provide accurate information); misuse of confidential information/breach of confidentiality; misuse of superior knowledge; failure to disclose; aiding and abetting or acting in concert with another; rendering inappropriate advice (e.g., bad business or investment advice).

88. The touchstone of liability for breach of fiduciary duty in the lender/borrower context is when a special relationship of trust or confidence is present. For example, fiduciary liability will attach where a creditor renders advice to the borrower, and thereby, induces the borrower to enter into a loan transaction. As in this Case, Plaintiff was ensured a modification subject to the conditions outlined by the Federal guidelines of Modification Procedures and parameters. In this instant Plaintiff signed 2014 Agreement with Defendant PennyMac Loan Services LLC, initiated by Defendant Chase Bank and the Contract indicates amounts owed and payment amounts. Defendants uniformly attempt to cajole Plaintiff into paying amounts far exceeding the stated amounts within the Contract; Defendants actions to hold Plaintiff home hostage, Plaintiffs credit hostage and Plaintiffs lives hostage are egregious in nature, fraudulent and a breach of their fiduciary duties; these actions must not be allowed to continue.

89. These actions by Defendants are ongoing and continually breaching their Fiduciary responsibilities and Plaintiff brings this charge timely.

### Sixth Cause of Action Failure to Supervise

90. Plaintiff reiterates items 1 thru 89 and Plaintiff charges the directors and supervisors within Defendants corporation structure have failed at maintain fair and honest business activities and fail to supervise. Plaintiff has been tremendously harmed by Defendants activity and these activities perhaps could have been negated with proper supervision and/or seemingly intentional.

### Seventh Cause of Action Breach of Contract and Breach of implied covenant of Good Faith Lending and fair dealings:

91. It is well settled that "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Restatement (Second) of Contracts § 205 (1981). *See also 511 W 232nd Owners Corp. v Jennifer Realty Co.*, 98 N.Y.2d 144, 153 (2002) ("In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance"). "This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *511 W 232nd Owners*, 98 N.Y.2d at 153 (citations and internal quotation marks omitted). "While the duties of good faith and fair dealing do not imply obligations inconsistent with other terms of the contractual relationship, they do encompass any promises which a reasonable person in the position of the promise would be justified in understanding were included." *Id.* (citations and internal quotation marks omitted).

92. To state a cognizable claim, "[a] plaintiff must allege a specific implied contractual obligation and allege how the violation of that obligation denied the plaintiff the fruits of the contract." *Kagan v. HMC-New York, Inc.*, 94 A.D.3d 67, 77 (1st Dept. 2012) (citation omitted). Conduct that frustrates the purpose of a contract is often described as bad faith, and is identified by, among other things, "evasion of the spirit of the bargain," "abuse of a power to specify terms," "interference with or failure to cooperate in the other party's performance," and willful rendering of imperfect performance. *E.g.*, Restatement (Second) of Contracts § 205 cmt. d. General allegations of bad faith are insufficient. *Kagan*, 94 A.D.2d at 77.

93. In New York, within every **contract** is an implied covenant of good faith and fair dealing. The covenant is breached when a party acts in a manner that deprives the other party of the right to receive benefits under their agreement. The covenant encompasses any promises which a reasonable person in the position of the promisee would be justified in understanding were included. *See 511 West 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153, 746 N.Y.S.2d 131, 773 N.E.2d 496 (N.Y. 2002); *Dalton v. Educational Testing Serv.*, 87 N.Y.2d 384, 389, 639 N.Y.S.2d 977, 663 N.E.2d 289 (N.Y. 1995); *Frankini v. Landmark Constr. of Yonkers, Inc.*, 91 A.D.3d 593, 595, 937 N.Y.S.2d 80 (2d Dep't 2012); *Ochal v. Television Tech. Corp.*, 26 A.D.3d 575, 576, 809 N.Y.S.2d 604; Leon C. Lazer, et al., *New York Pattern Jury Instructions – Civil* § 4.1 (2d ed. 2006).

94. In the case of a merchant engaged in a **transaction** in goods in New York, " 'Good faith' . . . means honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." N.Y. U.C.C. § 2-103(1)(b); *see id.* § 2-104(1) (defining" '[m]erchant' "); *id.* § 2-102.

95. The elements of a cause of action for breach of contract are (1) formation of a contract between plaintiff and defendants; (2) performance by plaintiff; (3) defendants' failure to perform; and (4) resulting damage (Noise in the Attic Productions v. London Records, 10 AD3d 303, 307 [1st Dept. 2004]; Furia v. Furia, 116 AD2d 694 [2nd Dept. 1986]). "In order to plead a breach of contract cause of action, a complaint must allege the provisions of the contract upon which the claim is based [and][t]he pleadings must be sufficiently particular to give the court and [the] parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved as well as the material elements of each cause of action or defense" (Atkinson v. Mobil Oil Corp., 205 AD2d 719, 720 [2nd Dept. 1994]; see also, Peters v. Accurate Bldg. Inspectors Div. of Ubell Ent., Inc., 29 AD3d 972 [2nd Dept. 2006]). Vague and conclusory allegations will not suffice (Gordon v. Dino De Laurentiis Corp., 141 AD2d 435, 436 [1st Dept. 1988; Fowler v. American Lawyer Media, Inc., 306 AD2d 113 [1st Dept. 2003]).

96. In this instant, Plaintiff and first with Defendant Chase Bank and thereafter with Defendant Pennymac Loan Services entered into the 2014 contract signed and executed between the parties. Defendant(s) thereafter continued to report incorrect amounts of the 2014 contract, on Plaintiffs credit report. Defendant PennyMac Loan Services LLC, as Plaintiffs loan service provider and Defendant Chase Bank as Plaintiffs Note Holders contracted Plaintiff as outlined with the 2014 Contract signed by the parties. Plaintiff and Defendant(s) contract allowed Plaintiffs loan to be modified subject to the terms and conditions stated therein including Plaintiff principle balance to be determined as **547,356.17** with payments term of 40 years beginning January 1, 2014.

97. The **2014 contract** signed by the parties did not have pre-payment penalty clause, as such, Plaintiff may pre-pay loan in full anytime thereafter. Plaintiff Bongiovanni health became an issue and Plaintiffs fell behind in payments in 2015-16; Defendants did file Foreclosure on Plaintiffs mortgage in Richmond County Supreme Court. Defendants indicated Plaintiff owed amounts far exceeding what the stated amounts owed subject to the **2014 Contract;** Defendants further requested and demand payment on old contracts and old amounts not relative to the signed 2014 contract between the parties and not relative to Plaintiffs past payments. Defendants further negotiated in bad Faith whereby offering Plaintiff a "new" modification subject to inflated principle amounts of **more than 230,000 above** principle balance owed, past payments or interest owed and fees owed. In opposition, in 2017-18, **Plaintiff offered to pay the Loan in full** including Principle, past interest owed and fees owed subject to the 2014 contract signed by the parties; Defendants refused payment whereby holding Plaintiffs home hostage, Plaintiffs credit hostage and Plaintiffs life hostage. Plaintiff did fall behind in payments; Plaintiff in an attempt to cure that deficiency offered, first to pay all back payments owed and fees owed; and second offered to pay loan in full including principle, back interest and fees, Defendants refused and requested amounts far exceeding any interpretation of the signed contract between the parties.

98. In this instant, Defendants breach the contract between the parties and illegally requested payments far exceeding what was contractually owed. Understandable Plaintiff has a responsibility to for-fill Plaintiff obligations subject to the signed **2014 contract** between the parties and make timely monthly payments; Defendants upon executing that right to be paid back payments or foreclose on an obligation between the parties, may not breach the contract between the parties or ask for amounts far exceeding what is contractually owed. Defendant Chase Bank (Note Holder) and Defendant Pennymac Services (loan service provider) and Defendant Rosicki, Rosicki and Associates (legal counsel and officers of the Court) may not jointly commit fraud upon the Court; and these Defendants may not negotiate in bad faith and may not breach the contract between the parties in order to collect balances owed; and upon Defendants refusing payment in full by plaintiff, may not, once again, be allowed to hold Plaintiffs credit hostage, home hostage and lives hostage. In short, defendants demand back payments owed, far exceeding the amounts, subject to the signed contract; and in response to that request, Plaintiff offers to pay loan in full, Defendants PennyMac Loan Services (loan service provide), Defendant Chase Bank (note holder) refuse payment subject to the signed contract between the parties.

## Eighth Cause of Action Violation of R.E.S.P.A.

99. RESPA was enacted in 1974 and was originally administered by the Department of Housing and Urban Development (HUD). In 2011, the Consumer Financial Protection Bureau (CFPB), created under the provisions of the Dodd-Frank Wall Street Reform and Consumer Protection Act, assumed the enforcement and rulemaking authority over RESPA. On December 31, 2013, the CFPB published final rules implementing provisions of the Dodd-Frank Act, which direct the CFPB to publish a single, integrated disclosure for mortgage transactions, which included mortgage disclosure requirements under the Truth in Lending Act (TILA) and sections 4 and 5 of RESPA. As a result, Regulation Z now houses the integrated forms, timing, and related disclosure requirements for most closed-end consumer mortgage loans.

100. It was created because various companies associated with the buying and selling of real estate, such as lenders, real estate agents, construction companies and title insurance companies were often engaging in providing undisclosed kickbacks to each other, inflating the costs of real estate transactions and obscuring price competition by facilitating bait-and-switch tactics. In this case, Defendant Chase Bank refuses Plaintiffs request for documentation, Hides loan notes and loan transaction history, releases loan modification specialists from key positions and creates road blocks whereby plaintiff and other consumers are refused key loan information. Defendant Chase Bank creates "new" bait and switch scheme whereby transferring Plaintiff approved modification during the "trial –period" whereby the new loan "service provider" Defendant PennyMac Loan services LLP cajoles the consumer or "switches" the consumer, your plaintiffs, into new terms or attempts to switch the consumer, your plaintiffs into "new" more favorable terms toward Defendants. Plaintiff contact Defendant Chase bank more than **25 times** requesting loan information and Plaintiff contacted Defendant Chase Bank by **(2) letters** to no avail. Defendant Chase responded by directing Plaintiffs to Plaintiffs "new" Loan Service provider, Defendant PennyMac Loan Services. Penny Mac Loan Services only provides Plaintiff with Loan information after the loan was transferred, as such, Plaintiff is refused critical Loan information as it pertains to Loan activity and Loan notes while being serviced by Defendant Chase Bank. In short, Loan notes and Loan service logs are intentional not given to Plaintiff as it pertains to Chase Bank modification team 2014 contract pre-approval log. Plaintiff was harmed by Defendant Chase Banks refusal of pertinent Loan information as it pertains to Plaintiff modification 2014 contract.

101. In this instant, the "kick-backs" occur as Defendant Chase Bank sells Plaintiffs loan Service to Defendants PennyMac Loan services, as the new Loan service provider, whom attempts to alter or changes the loan terms more favorable to Defendants; and the new service provider attempts to steal back the government aid given to the consumer, your plaintiffs. The Federal Government keeps modifying rules as big bank continues to find new innovative ways to steal from the consumer and steal from the Federal Government. Big Banks change their patterns of deception as the federal Government attempts to stop Big Banks bad behavior. It appear Big Banks, Defendants, are always one step ahead of the Federal Regulators. These new Fraud schemes must be halted.

### Ninth Cause of Action breach of the Fair Debt Collection Act:

102. The **Fair Debt Collection** Practices **Act (FDCPA)** is a **federal law** that limits the behavior and actions of third-party **debt collectors** who are attempting to **collect debts** on behalf of another person or entity.

103. **15 USC 1692 (e)** Indicates a third party Debt collector may not **make false or misleading representations** of the amount owed. In this instant, Defendant PennyMac Loan Service Corp, the loan Service, Defendant Chase Bank, note holder and Defendant PennyMac Corp, provides Plaintiff with intentional misleading information as it pertains to the amounts owed on Plaintiffs home loan. Defendant Rosicki as Council for Plaintiff is in fact a third party debt collector and legal Counsel; and are also engaged in the manipulation of Plaintiffs loan amounts favoring Defendants. In addition Defendants have continually misreported the amounts owed on Plaintiffs Credit and have harmed Plaintiff credit report. Lastly, Defendants have continually attempted to collect debt not remotely close to what is contractually owed. In this instant Defendant Rosicki, as legal Counsel for Defendants rendered their legal opinion as it pertains to the amounts Plaintiffs owed and further certified through the "Certificate of Merit" that Defendants Rosicki review Plaintiff Loan information and contracts further indicating wrong amounts to be correct. In short, defendant Rosicki legitimizes Defendants fraud and further negotiates with Plaintiff by attempting to cajole Plaintiff into agreeing to raise the principle balance of Plaintiff loan by **240,000 dollars** or Defendant Rosicki attempts to collect an extra 240,000 dollars not contractually owed by Plaintiff.

104. Section 1692e states that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." This Section provides protections to debtors from deceptive conduct, and is especially beneficial since many debtors are not familiar with their legal rights or with the credit industry in general, and sometimes struggle with financial literacy. This raises two questions: (1) which parties are liable under Section 1692e; and (2) at what point does a consumer have standing to sue under Section 1692e; the first issue has already been settled by the Supreme Court. In *Heintz v. Jenkins*, the Supreme Court expanded the FDCPA's application from only debt collectors to include lawyers who regularly engage in debt collection. The Supreme Court in *Heintz* held that the FDCPA's "definition of the term 'debt collector' includes a person 'who regularly collects or attempts to collect, directly or indirectly, debts owed [to] . . . another.'" Accordingly, lawyers who regularly try to collect consumer debts, usually on behalf of a debt collector, are also subject to the FDCPA as "debt collectors. "Thus, the FDCPA and Section 1692e make both debt collectors and their attorneys potentially liable for violations.

105. In this case, not only does the debt collector attempt to collect amount far exceeding what was contractually owed, but filled Foreclosure proceedings and Defendants affirmed under the penalty of perjury the amounts stated therein were correct; in addition Defendants further refused payment on the correct amounts contractually owed; and in doing so, have harmed Plaintiff tremendously.

106. In this Case, Defendants as movants in the related Foreclosure matter attached the 2014 Contract signed by the parties as the instrument of standing. Defendant Rosicki, as counsel for Defendants, may not attempt to change the parameters of the signed contract between the parties; understandable Defendant Rosicki has an interest to have a best possible result for their clients, yet in doing so, may not attempt to cajole the consumer, your Plaintiff, into collecting amounts far exceeding what is contractually owed. In this instant, Defendants Rosicki have a "higher standard" of compliance with the collection laws and Acts and must follow strict Federal mandated guidelines as it pertains to residential Foreclosure laws.

**Unfair Practices:**

107. **15 USC 1692 (f)** a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: (1) the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. As in this case, defendants may not attempt to collect amounts far exceeding the stated amounts within the contract prescribes. Defendants filled summons and complaint with Certificate of merit whereby certifying wrong or incorrect amounts. [Please see **Ex. 7**, summons, complaint, certificate of merit]

108. Defendants attempt to collect money not contractually owed, attempted to remove Plaintiff property without cause, as Plaintiff offered to pay all past loan payments and/or also offered to pay loan in full. Defendants refused to release Plaintiff home, Plaintiffs credit and have held Plaintiff lives hostage, these action must be punished and resolved.

## Tenth Cause of Action Negotiating on Bad Faith

109. CPLR 3408 requires all parties to negotiate in residential foreclosure matters. In this matter, Defendants never had meaningful negotiations with Plaintiff. Defendants presented Plaintiff with an offer to modify Plaintiff mortgage, on the CONDITION of Plaintiff willingness to agree to **increase** the principle balance owed on the note/loan, subject to the 2014 Contract, by 240,000 dollars higher than the stated amounts or about 40 percent more than the amount contractually owed. Plaintiff charges Defendants attempt to increase the principle amounts owed by 40 percent is not meaningful negotiation. In addition Defendants did not request the increase of 240,000 dollars as terms of a "new" agreement, instead Defendants attempted to cajole Plaintiffs into believing the increase amounts was legally owed by Plaintiff; in short, Defendants attempted to steal from Plaintiff or attempt to collect money not contractually owed.

## IV.    **Relief**

In this case, Defendants attempt to steal or collect about 240,000 not contractually owed by Plaintiff. Defendants have reported, on Plaintiffs credit report, negatively, as it pertains to the amount of Plaintiffs outstanding debt continually without cause; Defendants have refused to honor the 2014 contract signed by the parties and Defendants have refused to allow plaintiff to pay all outstanding monthly back payments and apply payments correctly causing Plaintiffs Financial and emotional turmoil; and Defendants have refused to allow Plaintiff to pay the loan in full, subject to the 2014 contract signed by the parties. The actions of Defendants have cause Plaintiff tremendous emotional and financial harm; the action of Defendants have cause Plaintiffs to lose tremendous amount of time from work and has effect Plaintiffs ability to lead a productive life. Plaintiff has presented **TEN** Cause of Actions Claims against Defendant(s) as it pertains to this complaint and Plaintiff has presented sufficient cause to have these matters move forward. Plaintiff only recourse against Defendants actions is the commencement of these proceedings, as Defendants action continue to harm Plaintiffs. Plaintiffs are Pro Se Litigants and will be requesting Legal Counsel to be provided and Plaintiff is requesting, upon legal Counsel being provided, permission to amend Plaintiffs Complaint, if need be.   Plaintiff reiterates items 1 thru 109 and Plaintiff reiterates Cause of action Claims One thru Ten.

**WHEREFORE:** Plaintiff seeks both punitive and monetary/expletory damages against each Defendant, fair and consistent with the applicable laws, not less than 50,000 dollars per cause of action or the Federal Law mandated minimum amounts per cause of action; and not more than one million dollars per cause of action or the applicable Federal law maximum amounts per cause of action. Plaintiff will be seeking legal Counsel to be appointed by the Court. Plaintiff will be seeking a preliminary injunction against Defendants and the Richmond County Supreme Court.  Plaintiff request the Court grant additional relief as it sees just and fair.

## IIV.   **Certification and Closing**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.     **For Parties without an Attorney**

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: _May 31_, 20_19_

Signature of Plaintiff _____

Name of Plaintiff _Sebastian Bongiovanni_  _Danielle Liberti Bongiovanni_

# EXHIBIT 1:

## Defendant Chase Bank Approval Letter

**Loan Number    24804056**



3415 VISION DRIVE
COLUMBUS, OH 43219-6009

JULY 11, 2013

SEBASTIAN BONGIOVANNI AND DANIELLE L
BONGIOVANNI

**You have been approved for a trial plan that could make your payments more affordable for the long term. Make your new payments on time each month!**

91 ALTER AVE
STATEN ISLAND, NEW YORK 10304

Account:          **24804056**
Property Address:  **91 ALTER AVE
STATEN ISLA, NEW YORK 10304**

Dear SEBASTIAN BONGIOVANNI AND DANIELLE L BONGIOVANNI:

You are approved to enter into a trial period payment plan. Now, it's time to take the next step in achieving long-term affordability for your home. Your Trial Period Plan is explained below.

Your Chase Trial Period Plan (TPP) payment schedule is shown in the table. Make these payments instead of your regular monthly payment. Call us or just make your first trial plan payment on time to accept this offer. **By making the first trial payment, you are accepting the terms of this plan, including the Additional Terms and Conditions set forth below.**

| TPP Amount | TPP Due Date |
|---|---|
| $ 2,596.01 | 09/01/2013 |
| $ 2,596.01 | 10/01/2013 |
| $ 2,596.01 | 11/01/2013 |

**If your first payment is not received at the address below by September 01, 2013, the payment plan will not be valid. Collection and/or foreclosure action may commence or continue.** Your first payment must be made using one of the payment coupons enclosed, payable to CHASE PAYMENT PROCESSING and mailed to:

**CHASE PAYMENT PROCESSING
P.O. BOX 78420
PHOENIX AZ 85062-8420**

Be sure to write your account number on your check. If you submitted two or more insufficient funds (NSF) checks within the past six months, certified checks are required for your trial plan payments.

Accepting this trial period plan may have a negative impact on your credit rating. See the attached Important Information section for more information.

If you have any questions, please call us at one of the telephone numbers listed below.

Sincerely,

Chase
(866) 550-5705
(800) 582-0542  TDD / Text Telephone

**Your dedicated Customer Assistance Specialist is:**
PAMELA GRANT
Direct phone number:  877-496-3138 ext 3463144

**See the Important Information to follow.**

WF150 – CHAMP-ID V6 06-25-12

Page 1 of 1



## ADDITIONAL TRIAL PERIOD PLAN TERMS AND CONDITIONS

Once the Trial Period Plan (TPP) begins, if you do not meet the terms of this Plan, JPMorgan Chase Bank, N.A. ("we"/"our") may, without further notice to you, terminate the Plan and commence or continue collection and/or foreclosure proceedings according to the terms of your Note and Security Instrument. **Note that the TPP will not bring your account current during the trial period.** Your final modified payment should be close to your trial payment, but we reserve the right to adjust the modified payment to take into account final amounts of unpaid interest, additional expenses and advances, and any other delinquent amounts (except late charges) to be added to your loan balance. After successful completion of the TPP, we will send you a Modification Agreement for your signature which will modify the Loan as necessary to reflect this new payment amount, as well as any other changes to the terms of your Loan.

You acknowledge that in the event you file a petition in bankruptcy, we may elect to take any and all actions, including, but not limited to, voiding this Agreement, filing a Motion for Relief from Automatic Stay or a motion to dismiss or any permitted state law remedies, which in our judgment are reasonably necessary to protect our security and/or to enforce our rights under the original terms of your Loan.

The terms of your TPP below are effective on the day you make your first TPP payment, provided you have paid it on or before **September 01, 2013**. You and we agree that:

1. **This TPP is not a permanent modification. You must make all of your TPP payments on time and continue to meet all program requirements before we can offer you a final modification.**
   - The terms of any final modification will be reflected in the permanent Modification Agreement that will be sent to you if you complete the TPP.
   - There are no monetary incentives for timely payments under this program. However, you may be offered principal forgiveness as part of the final modification, which could have tax consequences. You should check with your tax advisor on how this affects your situation.

2. **We will not proceed to foreclosure sale during the trial period, provided you comply with the terms of the TPP. However, any pending foreclosure action or proceeding will not be dismissed and may be immediately resumed if you default in the TPP.** A new notice of default, notice of intent to accelerate, notice of acceleration, or similar notice will not be necessary to continue the foreclosure action. You waive any and all rights to receive such foreclosure notices to the extent permitted by applicable law.

3. **During the trial period, we may accept and post your TPP payments to your account and it will not affect foreclosure proceedings that have already been started.**
   - The servicer's acceptance and posting of your new payment during the trial period will not be deemed a waiver of the acceleration of your loan or foreclosure action and related activities, and shall not constitute a cure of your default under your loan unless such payments are sufficient to completely cure your entire default under your loan.
   - We may also send legal notices required in connection with foreclosure actions and related activities during the trial period.

4. **If your monthly payment did not include escrows for taxes and insurance, you are now required to do so.** You agree that any prior waiver that allowed you to pay directly for taxes and insurance is revoked. You agree to establish an escrow account and to pay required escrows into that account even if your loan is not modified.

5. **Your current loan documents remain in effect; however, you should make the TPP payment instead of the payment required under your loan documents.** You agree that all terms and provisions of your current mortgage note and mortgage security instrument remain in full force and effect during the trial period and you will comply with those terms, and that nothing in the TPP shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the loan documents.



## IMPORTANT INFORMATION

**We are a debt collector.**

Your credit score may be adversely affected by accepting this trial period plan. During the trial period we will continue to report your mortgage loan payment status to the credit reporting agencies. If your loan was delinquent when you entered the Plan, we will continue to report your loan as delinquent even if you are making your trial payments on time. If your loan was current when you entered the Plan, and you make each trial period payment on time, we will report your loan as current, paying under a partial payment agreement. Once the modification is complete we will report the modification to the credit bureaus as modified under a federal government plan or loan modified based on the modification type and will report your loan as current if payments are received within 0 to 29 days of due date. Completing a modification will NOT change previous adverse reporting. The impact of a permanent modification on a credit score depends on the homeowner's entire credit profile. For more information about your credit score, go to http://www.ftc.gov/bcp/edu/pubs/consumer/credit/cre24.shtm.

**If you are represented by an attorney, please refer this letter to your attorney and provide us with the attorney's name, address, and telephone number.**

**To the extent your original obligation was discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation.**



Page 2 of 2

# EXHIBIT 2:

## 2014 Signed Modification Contract

## MODIFICATION AGREEMENT: COPY FOR YOUR RECORDS

**If you have any questions regarding this offer, please call us toll free at** (866) 545-9070

**Mail Date:** DECEMBER 16, 2013

**Mortgagor(s):** SEBASTIAN BONGIOVANNI, DANIELLE LIGUORI BONGIOVANNI

**Mailing Address:** 91 ALTER AVENUE
STATEN ISLAND, NEW YORK 10304

**Product:**

**Loan Number:** 1000057083

**Property Address:** 91 ALTER AVENUE
STATEN ISLAND, NEW YORK 10304

This letter ("Agreement") will confirm your agreement to modify your Note and your Security Instrument as follows.
Capitalized terms used herein have the meaning given them in the Note or the Security Instrument.

1.  This Agreement is not binding on Note Holder, unless and until Note Holder, or servicing agent, verifies that you qualify for this modification offer. You will promptly provide the Bank acceptable information to permit verification of your income, and make the payments shown in the payment schedule in paragraph 4 of this Agreement while the Bank verifies your information. If you qualify, the Bank will sign and return this Agreement to you, and it will be effective on the date it is signed by the Bank. If you do not make all payments when due while we verify that you qualify, or if you do not qualify, your Note will not be modified. The Bank will apply any payments you made to the amounts you owe.

2.  The unpaid principal balance of your Note as of the date of this Agreement, before modification, is $ 725,483.99

3.  The Note and the Security Instrument are modified to increase the principal balance of the Note by the amounts of your arrears on the Note of $ 55,542.58 . including past due interest in the amount of $ 24,857.75 . past due Escrow Items totaling $ 28,589.83 and servicing costs totaling $ 2,095.00 . The new principal amount of the Note is $ 547,356.17

4.  The interest rate and monthly payment on your Note is modified as follows:

| Year | New Interest Rate | Interest Rate Change Date | New Monthly Principal & Interest Payment Amount | Estimated Monthly Escrow Payment Amount | New Monthly Payments Begin On | Number of Payments |
|------|-------------------|---------------------------|--------------------------------------------------|------------------------------------------|-------------------------------|--------------------|
| 1 | 2.000% | 12/01/2013 | 1,657.53 | 931.94 | 01/01/2014 | 60 |
| 6 | 3.000% | 12/01/2018 | 1,925.67 | Adjusts Annually | 01/01/2019 | 12 |
| 7 | 4.000% | 12/01/2019 | 2,208.70 | Adjusts Annually | 01/01/2020 | 12 |
| 8 | 4.375% | 12/01/2020 | 2,317.47 | Adjusts Annually | 01/01/2021 | 396 |

DocMagic eForms
www.docmagic.com



5. Your monthly payment stated in your Note will change, effective with the payment due on **JANUARY 1, 2014** (i.e., one month after the effective date of the reduction of your interest rate, as set forth in paragraph 4 above). This monthly payment will consist of principal and interest and will change as shown in paragraph 4 above until the Maturity Date.

6. The Note Holder will send you notice of these changes.

7. The Maturity Date stated in your Note will change; the Maturity Date will be **DECEMBER 1, 2053** .

8. The monthly payments for principal and interest, stated above, do not include required payments for taxes and insurance, which may be substantial. Your monthly requirements for taxes and insurance will change periodically during the term of your mortgage.

9. Your Security Instrument will continue to secure payment and performance of the Note, as amended by this Agreement.

10. Except as modified by this Agreement, all terms and provisions of the Note, any Riders, and the Security Instrument remain in full force and effect.

11. The Note and Security Instrument are duly valid, binding agreements, enforceable in accordance with their terms, and are hereby reaffirmed.

Michael Drawdy
Senior Vice President, Asset Management

By: _____   1/15/14
                                  Date

I/We agree to the modification of my/our Loan as described above.

Mortgagor SEBASTIAN BONGIOVANNI              1/8/14
                                              Date

Mortgagor DANIELLE LIGUORI BONGIOVANNI       1/8/14
                                              Date

Mortgagor _____  Date       Mortgagor _____  Date

Mortgagor _____  Date       Mortgagor _____  Date

MODIFICATION AGREEMENT: COPY FOR YOUR RECORDS
PNMACC.LMA  03/26/09                      Page 2 of 2

DocMagic EForms
www.docmagic.com

## PAYMENT LETTER TO BORROWER

FROM     PENNYMAC LOAN SERVICES, LLC
            6101 CONDOR DRIVE
            MOORPARK, CALIFORNIA 93021

RE.       Loan Number: 1000057083
            Property Address. 91 ALTER AVENUE, STATEN ISLAND, NEW YORK 10304

TO       SEBASTIAN BONGIOVANNI, DANIELLE LIGUORI BONGIOVANNI
            91 ALTER AVENUE
            STATEN ISLAND, NEW YORK 10304

Dear Borrower

The monthly payments on the above referred to loan are to begin on    JANUARY 1, 2014   . and will continue monthly until   DECEMBER 1, 2053

Your monthly payment will consist of the following.

| | |
|---|---:|
| PRINCIPAL AND INTEREST | $ 1,657.53 |
| MMI/PMI INSURANCE | |
| RESERVE FOR TAXES | 603.19 |
| RESERVE FOR INSURANCE | 328.75 |
| RESERVE FOR FLOOD INSURANCE | |
| | |
| | |
| **TOTAL MONTHLY PAYMENTS** | $ 2,589.47 |

You are to make your payments to
        PENNYMAC LOAN SERVICES, LLC
        P.O. BOX 30597
        LOS ANGELES, CALIFORNIA 90030-0597

Any correspondence, or calls. in reference to your loan, please refer to the above loan number

Copy received and acknowledged

Date    1/8/14

SEBASTIAN BONGIOVANNI

DANIELLE LIGUORI BONGIOVANNI

# EXHIBIT 3:

**Email Correspondence between Plaintiff and Defendant PennyMac Corp Counsel**

| Subject: | RE: Forclosure Index 135011/2016 |
|---|---|
| From: | Salter, Timothy W. (tsalter@BlankRome.com) |
| To: | ssbb4711@yahoo.com; |
| Cc: | deng@BlankRome.com; |
| Date: | Thursday, December 21, 2017 12:48 PM |

Hi Mr. Bongiovanni,

My client declined the proposed modification terms, without a counteroffer.

**Timothy W. Salter | Blank Rome LLP**
The Chrysler Building 405 Lexington Avenue | New York, NY 10174-0208
Phone: 212.885.5218 | Fax: 917.332.3083 | Email: TSalter@BlankRome.com

**From:** Salter, Timothy W.
**Sent:** Monday, December 18, 2017 5:27 PM
**To:** 'Ss Bb' <ssbb4711@yahoo.com>
**Cc:** Eng, Diana M. <deng@BlankRome.com>
**Subject:** RE: Forclosure Index 135011/2016

Thank you for the "heads up." I will let you know how my client receives your counteroffer.

**Timothy W. Salter | Blank Rome LLP**
The Chrysler Building 405 Lexington Avenue | New York, NY 10174-0208
Phone: 212.885.5218 | Fax: 917.332.3083 | Email: TSalter@BlankRome.com

**From:** Ss Bb [mailto:ssbb4711@yahoo.com]
**Sent:** Monday, December 18, 2017 3:25 PM
**To:** Salter, Timothy W. <tsalter@BlankRome.com>
**Cc:** Eng, Diana M. <deng@BlankRome.com>
**Subject:** Re: Forclosure Index 135011/2016

Mr. Salter, I was just informed Allen Cappelli, Temporary Guardian for my son, is seeking to hire a Expert Foreclosure Attorney. It is my hope NOT to see my son, Michael, have to spend more money on Attorneys. In short, it would be best for all of us to settle this matter as soon as possible.

Sebastian Bongiovanni

On Monday, December 18, 2017 10:15 AM, "Salter, Timothy W." <tsalter@BlankRome.com> wrote:

Good morning,

I will communicate your offer to my client and get back to you.

**Timothy W. Salter | Blank Rome LLP**

The Chrysler Building 405 Lexington Avenue | New York, NY 10174-0208
Phone: 212.885.5218 | Fax: 917.332.3083 | Email: TSalter@BlankRome.com

**From:** Ss Bb [mailto:ssbb4711@yahoo.com]
**Sent:** Friday, December 15, 2017 4:09 PM
**To:** Salter, Timothy W. <tsalter@BlankRome.com>
**Subject:** Re: Forclosure Index 135011/2016

Timothy, I appreciate your response;

Is your client willing to place that amount (690,000) within a modification Agreement, within the same "rate" terms as offered in the beginning of the case? Please note the rate was a step up rate beginning at 2 percent for 3 years, year 4 at 3 percent, year 5 at 4 percent and year 7 to maturity (or payoff) at 5.125 percent or would your client would be wiling to offer a five year 2 percent "Arm" loan with a balloon payment so that I can make timely payments, rebuild my credit and refinance with a non-private lender. The current lenders I have engaged have capped the amount I can borrow at about 625,000 until my credit improves.

In short, your client wants more principle then they can stay in the loan a short while so that I can rebuild my credit, possible relocate or get new financing at a quality rate. I have five children and this house is their home and the only home they have lived in the last ten years or so, please ask your client to be reasonable.

Please let me know.

Sebastian Bongiovanni

On Friday, December 15, 2017 2:38 PM, "Salter, Timothy W." <tsalter@BlankRome.com> wrote:

Good afternoon Mr. Bongiovanni,

My client will accept $690,000.00 in full satisfaction of your loan.

**Timothy W. Salter | Blank Rome LLP**
The Chrysler Building 405 Lexington Avenue | New York, NY 10174-0208
Phone: 212.885.5218 | Fax: 917.332.3083 | Email: TSalter@BlankRome.com

**From:** Ss Bb [mailto:ssbb4711@yahoo.com]
**Sent:** Friday, December 8, 2017 3:39 PM
**To:** Salter, Timothy W. <tsalter@BlankRome.com>
**Cc:** Eng, Diana M. <deng@BlankRome.com>; Jessica Bookstaver <jbookstaver@rosicki.com>
**Subject:** Re: Forclosure Index 135011/2016

Mr. Salter I appreciate your response, Please get back to me next week, by Tuesday or Wednesday, would be greatly appreciated. By the way, I thought it was odd that the Court made your serve the Temporary Guardian TWICE, I guess the Court has special rules for Guardians, Richmond County Court is very unique, settle this case, I believe it is good for everyone.

Regards,

Sebastian Bongiovanni

On Friday, December 8, 2017 3:20 PM, "Salter, Timothy W." <tsalter@BlankRome.com> wrote:

Good afternoon,

I do not have any updates yet. I understand the fluidity of the situation with your potential lenders and will endeavor to get you my client's response as soon as possible.

**Timothy W. Salter | Blank Rome LLP**
The Chrysler Building 405 Lexington Avenue | New York, NY 10174-0208
Phone: 212.885.5218 | Fax: 917.332.3083 | Email: TSalter@BlankRome.com

**From:** Ss Bb [mailto:ssbb4711@yahoo.com]
**Sent:** Friday, December 8, 2017 3:17 PM
**To:** Salter, Timothy W. <tsalter@BlankRome.com>
**Cc:** Eng, Diana M. <deng@BlankRome.com>; Jessica Bookstaver <jbookstaver@rosicki.com>
**Subject:** Re: Forclosure Index 135011/2016

Mr. Salter, I hope your week went well. Can you please update me as to your clients position on the 'Offer" I emailed you.

Thank you.

Sebastian Bongiovanni

On Tuesday, December 5, 2017 3:59 PM, "Salter, Timothy W." <tsalter@BlankRome.com> wrote:

I understand, and appreciate, the foundation of your offer.  I will communicate the offer to my client and get back to you.

**Timothy W. Salter | Blank Rome LLP**
The Chrysler Building 405 Lexington Avenue | New York, NY 10174-0208
Phone: 212.885.5218 | Fax: 917.332.3083 | Email: TSalter@BlankRome.com
**From:** Ss Bb [mailto:ssbb4711@yahoo.com]
**Sent:** Tuesday, December 5, 2017 1:04 PM
**To:** Salter, Timothy W. <tsalter@BlankRome.com>
**Cc:** Eng, Diana M. <deng@BlankRome.com>; Jessica Bookstaver <jbookstaver@rosicki.com>
**Subject:** Re: Forclosure Index 135011/2016

Mr. Salter,

I am offering, to be clear, to Pay the amount of **547,356.17** in Principle amount as stated from the 2014 Modification plus ALL back interest owed thereafter, ALL back taxes and insurance owed thereafter and ALL reasonable fees associated with the loan thereafter. Accordingly, **625,000** seems relative to those amounts and is the foundation of my offer.

Please let me know as soon as possible.

Sebastian Bongiovanni

On Tuesday, December 5, 2017 12:22 PM, "Salter, Timothy W." <tsalter@BlankRome.com> wrote:

Good afternoon Mr. Bongiovanni,

Please confirm whether you are offering $625,000.00 or $635,000.00 and I will be happy to forward your settlement offer to my client.

**Timothy W. Salter | Blank Rome LLP**
The Chrysler Building 405 Lexington Avenue | New York, NY 10174-0208
Phone: 212.885.5218 | Fax: 917.332.3083 | Email: TSalter@BlankRome.com
**From:** Ss Bb [mailto:ssbb4711@yahoo.com]
**Sent:** Tuesday, December 5, 2017 11:55 AM
**To:** Salter, Timothy W. <tsalter@BlankRome.com>; Jessica Bookstaver <jbookstaver@rosicki.com>
**Subject:** Forclosure Index 135011/2016

Mr. Salter,

As I have expressed to you on several email communications with you, I have been in contact with several Private lenders to obtain financing and resolve the Issue and payoff my loan originated with Chase Bank and allegedly sold to your client, PennyMac. I have two separate private lenders willing to finance my home located at 91 Alter avenue in the amount of about **625,000-635,000.** My lenders have indicated to me, after review of the Modification I signed in 2014, the stated principle balance of **547,356.17** plus back payments (about 40,000) and all other outstanding fees including and insurance paid and real estate taxes (about 40,000) thereafter to date, are willing to allow me the opportunity to refinance my loan and pay-off these amount if full. If there is any other fees associated with this matter I am willing to also discuss. This would allow my family and I to continue to live in our home and **end litigation cost** including appeals or trial. **Please note,** subject to the contract signed by the parties in 2014, this is all your client could legally be owed and the amount I can afford to pay.

Please let me know if your client is willing to accept these terms as soon as possible.

Sebastian Bongiovanni

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This message and any attachments may contain confidential or privileged information and are only for the use of the intended recipient of this message. If you are not the intended recipient, please notify the sender by return email, and delete or destroy this and all copies of this message and all attachments. Any unauthorized disclosure, use, distribution, or reproduction of this message or any attachments is prohibited and may be unlawful.

*********************************************************************************************************

# EXHIBIT 4:

**Defendant Chase Bank Letter dated December 14, 2017**



Chase
P.O. Box 183222
Columbus, OH 43218-3222



December 14, 2017

001860 - 1 of 1 NSP0F1A-Z1 000000000000
Sebastian Bongiovanni
Danielle Liguori Bongiovanni
91 Alter Avenue
Staten Island, NY 10304

**Here's the investor contact information you requested**

Account:               056
Property Address:     91 Alter Avenue
                      Staten Isla, NY 10304-0000

Dear Sebastian Bongiovanni and Danielle Liguori Bongiovanni:

We've received your request for information about the owner of your loan.

We answer questions and service your mortgage loan on behalf of the investor, which is:

> JPMorgan Chase Bank, N.A.
> 3415 Vision Drive
> Columbus, OH 43219-6009
>
> Contact Phone: 1-800-848-9136

The ownership of your loan may change from time to time during the loan term, but this is the current owner.

If you have questions, please call us at one of the numbers below.

Sincerely,

Dean Cooper
Managing Director
Chase
1-800-848-9136
1-800-582-0542 TTY
www.chase.com

# EXHIBIT 5:

**Plaintiff Letter to Defendant Chase Bank dated March 20, 2018 and response  Letter dated March 22, 2018 by Defendant Chase Bank**

March 20, 2018

Sebastian Bongiovanni
91 Alter Avenue
Staten Island NY 10304

Chase Bank (by Fax 1-866-282-5682)
P.O. Box 183166
Columbus OH 43218

<u>RE:</u> Loan Number 0024804056
**Subject:** Request for information regarding the Current Loans Investor [owner of the Note] and The Current Loan Service provider.

To whom it may concern:

I, Sebastian Bongiovanni am formally requesting information regarding the Loan which was originated at the time I purchased my Home located at 91 Alter Avenue, Staten Island NY, 10304, by Chase Bank as the Lender [owner of the Loan or note] and Chase Bank as the Service provider.

I understand that from time to time a loan can be sold and the service provider can change as well, during the life of a loan. Please immediately provide me with information as it pertains to: (1) which company is the Investor or owner of my loan and owner of my note; and (2) which company is the current Service provider of my Loan.

The information I request can be email to ssbb4711@yahoo.com or by Fax at 718-979-2577 and please mail a copy to 91 Alter Avenue, Staten Island NY, 10304.

Regards

Sebastian Bongiovanni
718-979-2500 office number

Case 1:19-cv-03260-EK-VMS   Document 1   Filed 05/31/19   Page 51 of 69 PageID #: 51

**WF-2760**

**EPSON**
EXCEED YOUR VISION

---

# Fax Last Transmission

PAGE.          001/001

Mar.20.2018  11:33 AM

---

Name     :

Fax      : 7189792577

| Receipt Date and Time | Mar.20.2018  11:32AM |
|---|---|
| Start      /Finish | Mar.20.2018  11:32AM /Mar.20.2018  11:33AM |
| Result | OK |

| Date | Time | Type | ID | Duration | Pages | Result |
|---|---|---|---|---|---|---|
| Mar.20 | 11:32AM | Send | 18662825682 | 00:35 | 001/001 | OK |

**Chase (Mail Code OH4-7302)**
P.O. Box 183222
Columbus, OH 43218-3222



March 22, 2018

Sebastian Bongiovanni
Danielle Liguori Bongiovanni
91 Alter Avenue
Staten Island, NY 10304

**Please contact the new servicer of this loan with your request**

Account:            0024804056
Property Address:   91 Alter Avenue
                    Staten Isla, NY 10304-0000

Dear Sebastian Bongiovanni and Danielle Liguori Bongiovanni:

Thank you for your request. We're unable to assist you because the servicing of this mortgage account transferred on September 3, 2013. Please call the new servicer for help with your request.

If you have questions, please call us. We appreciate the opportunity to have served you.

Sincerely,

Steve Brooks
Executive Director
1-800-848-9136
1-800-582-0542 TTY
chase.com

Esta comunicación contiene información importante acerca de la cuenta. Si tiene alguna pregunta o necesita ayuda para traducirla, comuníquese con nosotros llamando al 1-855-280-4198.

CR11885
CC274

# CHASE FAX COVER SHEET

**Date:** 3/22/2018

If you do not receive a clear transmission, please call us at the Customer Care number referenced below.

| | |
|---|---|
| **Deliver To:** Sebastian Bongiovanni and Danielle Liguori Bongiovanni | **Sent From:** Chase (Mail Code OH4-7302) P.O. Box 183222 Columbus, OH 43218-3222 |
| **Fax:** (718) 979-2577 | |

**Confidentiality Notice:**

Per your request, the documents were sent via the fax number provided to Chase by you or your representative. If you do not receive any or all of the pages properly, please call us at . This transmission is only intended for the use of the individual or entity to which it is addressed, and may contain information that is confidential or privileged under law. If the reader of this message is not the intended recipient, you are hereby notified that retention, dissemination, distribution, disclosure, printing, copying, or use of any of the information contained in or attached to this fax is strictly prohibited. If you received this fax in error, please notify the sender immediately by telephone and destroy the original. Thank you.

# EXHIBIT 6:

**Plaintiff Letter to Defendant Chase Bank dated March 23, 2018 and response Letter dated March 28, 2018 by Defendant Chase Bank**

**Chase (Mail Code OH4-7302)**
P.O. Box 183222
Columbus, OH 43218-3222



March 28, 2018

Sebastian Bongiovanni
Danielle Liguori Bongiovanni
91 Alter Avenue
Staten Island, NY 10304

**Please contact the new servicer of this loan with your request**

Account:            0024804056
Property Address:   91 Alter Avenue
                    Staten Isla, NY 10304-0000

Dear Sebastian Bongiovanni and Danielle Liguori Bongiovanni:

Thank you for your request. We're unable to assist you because the servicing of this mortgage account transferred on September 3, 2013. Please call the new servicer, PennyMac Loan Services, at 1-800-777-4001 for help with your request.

If you have questions, please call us. We appreciate the opportunity to have served you.

Sincerely,

Steve Brooks
Executive Director
1-800-848-9136
1-800-582-0542 TTY
chase.com

Esta comunicación contiene información importante acerca de la cuenta. Si tiene alguna pregunta o necesita ayuda para traducirla, comuníquese con nosotros llamando al 1-855-280-4198.

CR11885
CC274

March 23, 2018

Sebastian Bongiovanni
91 Alter Avenue
Staten Island NY 10304

Chase Bank (by Fax 1-866-282-5682)
P.O. Box 183166
Columbus OH 43218

<u>RE:</u> Loan Number 0024804056
<u>Subject:</u> Request for information regarding the Current Loans Investor [owner of the Note] and The Current Loan Service provider.

To whom it may concern:

I, Sebastian Bongiovanni am formally requesting information regarding the Loan which was originated at the time I purchased my Home located at 91 Alter Avenue, Staten Island NY, 10304, by Chase Bank as the Lender [owner of the Loan or note] and Chase Bank as the Service provider.

I understand that from time to time a loan can be sold and the service provider can change as well, during the life of a loan. Please immediately provide me with information as it pertains to: (1) which company is the Investor or owner of my loan and owner of my note; and (2) which company is the current Service provider of my Loan. *(3) Whom was the Investor During the Life of the loan while Chase Bank was the Service provider. (2008 thru 2013 years)*
The information I request can be email to ssbb4711@yahoo.com or by Fax at 718-979-2577 and please mail a copy to 91 Alter Avenue, Staten Island NY, 10304.

Regards

Sebastian Bongiovanni
718-979-2500 office number

WF-2760

**EPSON**
EXCEED YOUR VISION

# Fax Last Transmission

Name      :

Fax       : 7189792577

| | |
|---|---|
| Receipt Date and Time | Mar.23.2018  10:52AM |
| Start    /Finish | Mar.23.2018  10:52AM /Mar.23.2018  10:53AM |
| Result | OK |

| Date | Time | Type | ID | Duration | Pages | Result |
|---|---|---|---|---|---|---|
| Mar.23 | 10:52AM | Send | 18662825682 | 00:42 | 001/001 | OK |

# EXHIBIT 7:

## Defendant PennyMac Corp Summons, Complaint and Certificate of Merit

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF RICHMOND
-------------------------------------------------------------------------x
PENNYMAC CORP.

                               **Plaintiff,**

        -against-

DANIELLE LIGUORI BONGIOVANNI; SEBASTIAN
BONGIOVANNI; NEW YORK CITY TRANSIT
ADJUDICATION BUREAU; NEW YORK CITY
PARKING VIOLATIONS BUREAU; NEW YORK
CITY ENVIRONMENTAL CONTROL BOARD;
"JOHN DOES" and "JANE DOES", said names being
fictitious, parties intended being possible tenants or
occupants of premises and corporations, other entities or
persons who have, claim, or may claim, a lien against, or
other interest in, the premises,

                          **Defendant(s).**
-------------------------------------------------------------------------x

Index No.
D/O/F:

          **SUMMONS**

Premises Address:
91 ALTER AVENUE
STATEN ISLAND, NY 10304

TO THE ABOVE NAMED DEFENDANTS:

       YOU ARE HEREBY SUMMONED to answer the Complaint in this action, and to serve
a copy of your Answer, or, if the Complaint is not served with this Summons, to serve a Notice
of Appearance on the Plaintiff's Attorneys within twenty (20) days after the service of this
Summons, exclusive of the day of service, where service is made by delivery upon you
personally within the State, or within thirty (30) days after completion of service where service is
made in any other manner, and in case of your failure to appear or answer, judgment will be
taken against you by default for the relief demanded in the complaint.

<u>**NOTICE**</u>
<u>**YOU ARE IN DANGER OF LOSING YOUR HOME**</u>
<u>**If you do not respond to this summons and complaint by serving a copy of the answer on
the attorney for the mortgage company who filed this foreclosure proceeding against you
and filing the answer with the court, a default judgment may be entered and you can lose
your home.**</u>
<u>**Speak to an attorney or go to the court where your case is pending for further information
on how to answer the summons and protect your property.**</u>
<u>**Sending a payment to your mortgage company will not stop this foreclosure action.**</u>
<u>**YOU MUST RESPOND BY SERVING A COPY OF THE ANSWER ON THE
ATTORNEY FOR THE PLAINTIFF (MORTGAGE COMPANY) AND FILING THE
ANSWER WITH THE COURT.**</u>

**PLEASE BE AWARE:**

       (1) that debt collectors, in accordance with the Fair Debt Collection Practices Act, 15
U.S.C. § 1692 et seq., are prohibited from engaging in abusive, deceptive, and unfair debt
collection efforts, including, but not limited to:
          (i) the use or threat of violence;

(ii) the use of obscene or profane language; and
(iii) repeated phone calls made with the intent to annoy, abuse, or harass.
    (2) If a creditor or debt collector receives a money judgment against you in court, state and federal laws may prevent the following types of income from being taken to pay the debt:
1. Supplemental security income, (SSI);
2. Social security;
3. Public assistance (welfare);
4. Spousal support, maintenance (alimony) or child support;
5. Unemployment benefits;
6. Disability benefits;
7. Workers' compensation benefits;
8. Public or private pensions;
9. Veterans' benefits;
10. Federal student loans, federal student grants, and federal work study funds; and
11. Ninety percent of your wages or salary earned in the last sixty days.

    The following notice is intended only for those defendants who are owners of the premises sought to be foreclosed or who are liable upon the debt for which the mortgage stands as security.

**YOU ARE HEREBY PUT ON NOTICE THAT WE ARE ATTEMPTING TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

    The amount of the debt as of the date of this summons: $821,459.07 consisting of principal balance of $778,787.03, which consists of a non-interest bearing principal of $233,670.40 and an interest bearing principal of 545,116.63; plus interest of 20,154.44, escrow/impound shortages or credits of $18,845.43, late charges of $497.25; Broker's Price Opinion, inspection and miscellaneous charges of $865.50; attorney fee $1,750.00 and title search $537.69; Surrogate Search fee of $21.73. Because of interest and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive the check, in which event we will inform you.

    The name of the creditor to whom the debt is owed: PENNYMAC CORP.

    Unless you dispute the validity of the debt, or any portion thereof, within thirty (30) days after receipt hereof, the debt will be assumed to be valid by Rosicki, Rosicki & Associates P.C.

    If you notify Rosicki, Rosicki & Associates P.C. in writing within thirty (30) days after your receipt hereof that the debt, or any portion thereof, is disputed, we will obtain verification of the debt or a copy of any judgment against you representing the debt and a copy of such verification or judgment will be mailed to you by Rosicki, Rosicki & Associates P.C.

    Upon your written request within 30 days after receipt of this notice, Rosicki, Rosicki & Associates P.C. will provide you with the name and address of the original creditor if different from the current creditor.

Note: Your time to respond to the summons and complaint differs from your time to dispute the validity of the debt or to request the name and address of the original creditor. Although you have as few as 20 days to respond to the summons and complaint, depending on the manner of service, you still have 30 days from receipt of this summons to dispute the validity of the debt and to request the name and address of the original creditor.

TO THE DEFENDANTS, except DANIELLE LIGUORI BONGIOVANNI AND SEBASTIAN BONGIOVANNI: The Plaintiff makes no personal claim against you in this action.

TO THE DEFENDANTS: DANIELLE LIGUORI BONGIOVANNI AND SEBASTIAN BONGIOVANNI: If you have obtained an order of discharge from the Bankruptcy court, which includes this debt, and you have not reaffirmed your liability for this debt, this law suit is not alleging that you have any personal liability for this debt and does not seek a money judgment against you. Even if a discharge has been obtained, this lawsuit to foreclose the mortgage will continue and we will seek a judgment authorizing the sale of the mortgaged premises.

Dated: January 6, 2016

Ijeoma Nduka, Esq.
**ROSICKI, ROSICKI & ASSOCIATES, P.C.**
Attorneys for Plaintiff
Main Office 51 E Bethpage Road
Plainview, NY 11803
516-741-2585

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF RICHMOND
------------------------------------------------------------------------x
PENNYMAC CORP.

                                  Plaintiff,

              -against-

DANIELLE LIGUORI BONGIOVANNI; SEBASTIAN
BONGIOVANNI; NEW YORK CITY TRANSIT
ADJUDICATION BUREAU; NEW YORK CITY
PARKING VIOLATIONS BUREAU; NEW YORK
CITY ENVIRONMENTAL CONTROL BOARD;;
"JOHN DOES" and "JANE DOES", said names being
fictitious, parties intended being possible tenants or
occupants of premises and corporations, other entities or
persons who have, claim, or may claim, a lien against, or
other interest in, the premises,

                              Defendant(s).
------------------------------------------------------------------------x

Index No.
D/O/F:

**COMPLAINT**
Premises Address:
91 ALTER AVENUE
STATEN ISLAND, NY 10304

       Plaintiff, by its attorney, ROSICKI, ROSICKI & ASSOCIATES, P.C., complaining of the Defendant(s) alleges, upon information and belief as follows:

## FIRST CAUSE OF ACTION

       1.     At all times hereinafter mentioned, plaintiff was and still is duly organized and existing under the laws of the Delaware.

       2.     At all times hereinafter mentioned, the defendants were, and still are, residents, corporations and/or bodies politics, duly authorized to reside and/or exist in and under the laws of New York State.

       3.     On or about November 13, 2007, DANIELLE LIGUORI BONGIOVANNI and SEBASTIAN BONGIOVANNI executed and delivered to JPMORGAN CHASE BANK, N.A., a note bearing date that day, whereby DANIELLE LIGUORI BONGIOVANNI and SEBASTIAN BONGIOVANNI covenanted and agreed to pay the sum of $637,500.00, with interest on the unpaid balance thereof, at the rate of 9.9990 percent per annum, to be computed from the date of said note, by payments of $5,594.05 on January 1, 2008 and thereafter in payments of $5,594.05 on the like date of each subsequent month, until said note is fully paid, except that the final payment of principal and interest remaining due, if not sooner paid, shall become due and payable on December 1, 2037.  See note attached as an Exhibit hereto.

       4.     As collateral security for the payment of said indebtedness, the aforesaid defendant(s) DANIELLE LIGUORI BONGIOVANNI and SEBASTIAN BONGIOVANNI, also executed, acknowledged and delivered to JPMORGAN CHASE BANK, N.A., a mortgage dated November 13, 2007 and recorded in the County of Richmond on May 21, 2008 under Document No. 252987 of Mortgages. The mortgage tax was duly paid. Thereafter said mortgage was assigned to the PENNYMAC CORP. by assignment of mortgage bearing date December 5, 2013 and recorded under Document No. 510197 of Mortgages in the County of Richmond on January 10, 2014.

Said mortgaged premises being known as and by street address:
91 ALTER AVENUE, STATEN ISLAND, NY 10304,      bearing tax map designation:

Block: 3300  Lot(s): 76

which premises are more fully described in Schedule "A," annexed hereto and made a part hereof.

4a.    The aforesaid instruments were thereafter modified by Home Affordable Modification Agreement made effective October 1, 2011 creating a new principal balance of $727,288.58, consisting of a deferred non-interest bearing principal balance of $128,900.00 and interest-bearing principal balance of $598,388.58, a copy of which is annexed hereto.

4b. The aforesaid instruments were thereafter modified by agreement dated December 16, 2013, creating a new principal balance of $725,483.99, consisting of a deferred non-interest bearing principal balance of $233,670.40 and interest-bearing principal balance of $547,356.17, a copy of which is annexed hereto.

5.    Plaintiff
(a)    is the holder of the subject note and mortgage, or has been delegated the authority to institute a mortgage foreclosure action by the owner and holder of the subject mortgage and note; and

(b)    has complied with all the provisions of section five hundred ninety-five-a of the Banking Law and any rules and regulations promulgated there under, section six-L or six-M of the Banking Law, and

(c)    is in compliance with sending the ninety (90) day notices as required by RPAPL §1304; see 90 day notice attached as an Exhibit hereto. .

(d)    is in compliance with RPAPL §1306, if applicable. The tracking number provided by the New York State Department of Financial Services for the reporting is NYS3809163.

6.    Said premises are subject to covenants, restrictions, easements of record, prior mortgages and liens, and amendments thereto, if any; to any state of facts an accurate survey may show; railroad consents and sewer agreements, and to utility agreements, municipal and governmental zoning, rules, regulations and ordinances, if any.

7.    That the Mortgagors, their successors, assigns and/or transferees, have failed to comply with the terms and conditions of said above named instrument[s] by failing or omitting to pay the installment which became due and payable as of April 1, 2014 and also by failing or omitting to pay the installment which became due and payable each and every month thereafter, to the date hereof, although duly demanded.

8.    The total monthly payment due as of default date to plaintiff is $2,589.47.

9.    That the terms of the above described instruments provide: (1) that the whole of said principal sum and interest shall become due at the option of the Mortgagee after default in the payment of any installment of principal or of interest; (2) that upon any default the Mortgagor will pay to the Mortgagee any sums paid for taxes, charges, assessments, and

insurance premiums upon said mortgaged premises; (3) that in case of sale under foreclosure, the premises may be sold in one parcel.

10     Pursuant to the terms of said instrument[s] notice of default has been duly given to the defendants DANIELLE LIGUORI BONGIOVANNI and SEBASTIAN BONGIOVANNI if required, and the period to cure, if any, has elapsed and by reason thereof, Plaintiff has elected and hereby elects to declare immediately due and payable the entire unpaid balance of principal.

11.     That the balance of principal due upon said note and mortgage as of the date of said default and as of the time of this Complaint is $778,787.03, consisting of a deferred non-interest bearing principal balance of $233,670.40 and interest-bearing principal balance of $545,116.63, plus interest from March 1st, 2014.

12.     That in order to protect its security, plaintiff may be compelled during the pendency of this action to make repairs to, board, secure, protect and maintain the premises, to pay taxes, assessments, water rates, sewer rentals, insurance premiums, mortgage insurance premiums, if there be any, and other charges affecting the premises, and the plaintiff requests that any sum so paid be added to the sum otherwise due, with interest as provided in the aforesaid instruments, and be deemed secured by said instrument[s] and adjudged a valid lien on the premises hereinabove described.

13.     That the plaintiff requests that in the event this action proceeds to Judgment of Foreclosure and Sale, said premises be sold subject to covenants, restrictions and easements, prior mortgages and liens, and amendments, if any, of record; any state of facts an accurate survey may show; restrictions, regulations, ordinances and zoning ordinances of any municipal or governmental authority having jurisdiction thereof; and municipal, departmental and other governmental violations, if any, affecting the premises; and real estate taxes, sewer rents, water charges, if any, open of record.

14.     That no other action has been commenced at law or otherwise for the recovery of the sum or any part thereof secured by the said instrument[s].

15.     That the defendants all have or claim to have some interest in or lien[s] upon the said mortgaged premises, or some part thereof, which interest or lien[s], if any, has [have] accrued subsequently to the lien[s] of the said mortgage[s] or was in express terms or by law made subject thereto, or has [have] been duly subordinated thereunto.

16.     That the defendants "JOHN DOES" and "JANE DOES" may be tenants or may be in possession of the aforementioned premises, or may be corporations, other entities or persons who claim, or may claim, a lien against the premises.

17.     That the basis for naming any political subdivision, governmental agency or similar body, or the holder of a security interest in either personal property or real property, if any, is set forth as Schedule "B."

## SECOND CAUSE OF ACTION

17.     Plaintiff repeats and reiterates each and every allegation of the complaint in paragraphs "1" through "16" with the same force and effect as if set forth herein.

18.     That this action is brought in part pursuant to Article 15 of the Real Property Actions and Proceedings Law.

19.     That no personal claim is being made against the defendants herein under the Second Cause of Action unless said defendant(s) shall assert a claim adverse to the claim of the Plaintiff as set forth in the Complaint herein.

20.     That the mortgage dated November 13, 2007 and recorded in the County of Richmond on May 21, 2008 under Document No. 252987 of Mortgages has been duly recorded against the premises known as 91 ALTER AVENUE, STATEN ISLAND, NY 10304, bearing tax map designation Block: 3300, Lot(s): 76, and more fully described in Schedule "A."

19.     That the parties to the mortgage agreement intended that abovementioned mortgage encumber that the subject premises as more fully described in the annexed Schedule A.

20.     That through mutual mistake of the parties to the transaction, the Schedule A containing the property description recorded with the mortgage is erroneous due to a scrivener's error.

21.     That the mortgage as recorded failed to accurately reflect the intent of the parties to the mortgage.

22.     That by virtue of the fact that the aforesaid mortgage is indexed against the premises, plaintiff has an interest in the premises.

23.     That the Plaintiff will make a request in the Order of Reference that the court issue an Order deeming the aforementioned mortgage reformed nunc pro tunc from the date of recording, to include the correct legal description as it appears herein in the annexed Schedule "A."

24.     That the reformation of the aforesaid mortgage will not prejudice the defendant(s).

25.     That the Court has jurisdiction to grant such relief and the Plaintiff has no adequate remedy at law.

WHEREFORE, plaintiff demands judgment for the following:

A) On the first cause of action, that the defendants and all persons claiming under them subsequent to the filing of the Notice of Pendency of this action in the County of Richmond may be forever barred and foreclosed from all right, title, claim, lien and equity of redemption in said mortgaged premises, and each and every part thereof; except the right of the United States of America and its political subdivision, if it or they be a party to this action, to redeem as provided for in the applicable laws; that the said premises may be decreed to be sold according to law; that the amount of principal due the plaintiff on said note and mortgage may be adjudged in the sum

of $778,787.03 plus interest from March 1st, 2014, and that from the money arising from the sale, plaintiff be paid the amount of $778,787.03, consisting of a deferred non-interest bearing principal balance of $233,670.40 and interest-bearing principal balance of $545,116.63, principal due it on said note and mortgage with interest and late charges that may be due and owing to the time of such payment plus the expenses of sale and the costs and expenses of this action, together with any sum which may be paid by the plaintiff for repairs to, boarding, securing, protecting and maintaining the premises, taxes, charges, assessments and insurance premiums upon said mortgaged premises, with appropriate interest thereon so far as such moneys properly applicable thereto will pay the same; that the defendants DANIELLE LIGUORI BONGIOVANNI and SEBASTIAN BONGIOVANNI be adjudged to pay any deficiency which may remain; that a Receiver, upon plaintiff's application therefore, be forthwith appointed for said mortgaged premises for the benefit of the plaintiff, with all powers of receivers in such actions, and that the plaintiff have such other and further relief as may be just and proper in the premises, together with attorney's fees, costs and disbursements of this action;

B)  On the second cause of action, that the mortgage will be deemed reformed nunc pro tunc from the date of recording to include the legal description as it appears herein in the annexed Schedule "A;"

C)  That the plaintiff may have such other and further relief in the premises as may be deemed just and equitable.

Dated: January 6, 2016

Ijeoma Nduka, Esq.
**ROSICKI, ROSICKI & ASSOCIATES, P.C.**
Attorneys for Plaintiff
Main Office 51 E Bethpage Road
Plainview, NY 11803
516-741-2585

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF RICHMOND
-------------------------------------------------------------------x

PENNYMAC CORP.

Plaintiff(s),

v.

DANIELLE LIGUORI BONGIOVANNI;
SEBASTIAN BONGIOVANNI; NEW YORK CITY
TRANSIT ADJUDICATION BUREAU; NEW YORK
CITY PARKING VIOLATIONS BUREAU; NEW
YORK CITY ENVIRONMENTAL CONTROL
BOARD; "JOHN DOES" and "JANE DOES", said
names being fictitious, parties intended being possible
tenants or occupants of premises and corporations,
other entities or persons who have, claim, or may
claim, a lien against, or other interest in, the premises,

Defendant(s).

-------------------------------------------------------------------x

Index No.:

CERTIFICATE OF MERIT
PURSUANT TO CPLR 3012-b

Mortgaged Premise Address:
91 ALTER AVENUE, STATEN
ISLAND, NY 10304

     1.     I am an attorney at law duly licensed to practice in the State of New York, and am
affiliated with the law firm of ROSICKI, ROSICKI & ASSOCIATES, P.C., attorney for plaintiff
PENNYMAC CORP. in this action.

     2.     I have reviewed the facts of this case and reviewed pertinent documents, including the
mortgage, security agreement and note or bond underlying the mortgage executed by defendant, all
instruments of assignment (if any), and all other instruments of indebtedness including any
modification, extension, and consolidation.

     3.     I have consulted about the facts of this case with the following representatives of
plaintiff:

| Name | Title |
| --- | --- |
| OSCAR CARIAS | DEFAULT SPECIALIST I |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

     4.     Upon this review and consultation, to the best of my knowledge, information, and belief,
I certify that there is a reasonable basis for the commencement of this action, and that plaintiff is the
creditor entitled to enforce rights under these documents.

     5.     Listed in Exhibit A and attached hereto are copies of the following documents not
otherwise included as attachments to the summons and complaint: the mortgage, security agreement

and note or bond underlying the mortgage executed by the defendant; all instruments of assignment (if any); and any other instrument of indebtedness, including any modification, extension, and consolidation. (Check box if <u>no</u> documents are attached in Exhibit A: ☑ .)

6.      Listed in Exhibit B and attached hereto are supplemental affidavits attesting that certain documents as described in paragraph 5 <u>supra</u> are lost, whether by destruction, theft, or otherwise. (Check box if <u>no</u> documents are attached in Exhibit B: ☑ .)

7.      I am aware of my obligations under New York Rules of Professional Conduct (22 NYCRR Part 1200) and 22 NYCRR Part 130.


Dated: January 6, 2016

_____
Ijeoma Nduka, Esq.

Index No.:

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF RICHMOND
---------------------------------------------------------------------------------
 PennyMac Corp.,

                                                   Plaintiff,

                -against-

DANIELLE LIGUORI BONGIOVANNI;
SEBASTIAN BONGIOVANNI;, et al.,

                              Defendant(s).

---------------------------------------------------------------------------------


**CERTIFICATE OF MERIT PURSUANT TO CPLR 3012-b**


**ROSICKI, ROSICKI & ASSOCIATES, P.C.**

By: _____
           Ijeoma Nduka, Esq.
         Attorneys for Plaintiff
     Main Office 51 E Bethpage Road
         Plainview, NY 11803
           516-741-2585
           516-622-9434
         RR&A: 12-009208