UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------x

 SEBASTIAN BONGIOVANNI,

                Plaintiff,

              -against-

 PENNYMAC CORP., et al.,

                Defendants.


-------------------------------------x
ERIC KOMITEE, United States District Judge:

**MEMORANDUM & ORDER**
19-CV-3260(EK)(VMS)

          Plaintiff Sebastian Bongiovanni brings this action *pro se* against JPMorgan Chase Bank, N.A. ("Chase"); PennyMac Corp. and PennyMac Loan Services, LLC (together, "PennyMac"); and the law firm of Rosicki, Rosicki and Associates, P.C.  Plaintiff's claims arise out of a mortgage loan he executed with Chase that was later assigned to PennyMac.  He alleges that the Defendants defrauded him in connection with the origination, servicing, transfer, and foreclosure of the loan.  Plaintiff filed a stipulation of dismissal with prejudice as to Chase on February 24, 2020.  ECF No. 67.  The remaining defendants move to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## I. Background

          The following facts are taken from the Amended Complaint and attached exhibits, unless otherwise noted, and are

presumed to be true for purposes of Defendants' motions.   On November 13, 2007, Plaintiff and his wife closed on a $637,500 mortgage loan from Chase to finance the purchase of a home in Staten Island.   Amended Complaint ¶¶ 14-15, ECF No. 5 ("Complaint").   At the time of closing, Plaintiff learned that the interest rate and other loan terms would be less favorable than he had expected.   *Id.* ¶ 15.   Still, he was assured that he would qualify for a lower interest rate after six months of on-time payments.   *Id.*   This lower rate never materialized, despite his timely payments over the first six months and his requests for a loan modification.   *Id.* ¶ 16.

In late 2009, Plaintiff began to fall behind on mortgage payments.   *Id.* ¶ 35.   He asked Chase to modify his payment obligations because his income could no longer support them.   *Id.* ¶¶ 34-35.   On or about October 1, 2011, Plaintiff entered into a written Loan Modification Agreement with Chase, but Plaintiff alleges that the terms remained too burdensome and that the modification did not "credit" him adequately for the payments he previously made.   *Id.* ¶¶ 36-37.   After falling further behind on the loan, Plaintiff received an offer in July 2013 to participate in Chase's "Trial Period Plan," which he understood would make his mortgage "payments more affordable for the long term" if he made three "trial payments" on time. *Id.* ¶¶ 39-40; Ex. 1.   The trial plan was funded by a government

2

program developed to assist consumers.  *Id.* ¶ 39.  Plaintiff
made the first trial payment to Chase; thereafter, however, he
was notified that his mortgage loan had been assigned to
PennyMac.  *Id.* ¶ 41.  Following the assignment, Plaintiff made
the second and third trial payments to PennyMac, based on his
understanding that his loan modification would be "transferred
correctly."  *Id.* ¶¶ 41-42.

Plaintiff did not receive the further modification
that he expected following the trial period.  He did enter into
a written Loan Modification Agreement with PennyMac, effective
on January 1, 2014.[1]  *Id.* ¶ 42, Ex. 2.  The Complaint does not
specify how PennyMac amended the terms of Plaintiff's loan in
that loan modification.  Nor does it indicate what, if any,
consideration PennyMac did deliver via the amendment.  Plaintiff
acknowledges signing the loan modification agreement, but
contends that he was "vulnerable to deception" during the trial
payment period and that the agreement "us[ed] language that
could be construed in various advantageous ways, favoring
Defendants."  *Id.* ¶ 63.  He alleges further that the Defendants
"attempt[ed] to retract previous [sic] promised saving[s]" by
offering new payment terms that favored the lender.  *Id.* ¶ 63.
Plaintiff further alleges that PennyMac reported the loan

---

[1] The Loan Modification Agreement states that it is "effective . . .
January 1, 2014," but reflects an execution date of January 9, 2014.

3

principal incorrectly on his monthly mortgage statements and credit report. *Id.* ¶ 43. Plaintiff contacted PennyMac to dispute the amounts owed. *Id.* Thereafter, he again fell behind on mortgage payments. *Id.* ¶¶ 43-44.

On January 7, 2016, PennyMac, represented by defendant Rosicki, Rosicki and Associates, filed a foreclosure action against Plaintiff and his wife in New York State Supreme Court, Richmond County.[2] *Id.* ¶¶ 45-46. Plaintiff alleges here that, in commencing the foreclosure action, Defendants inflated the loan balance owed by more than $240,000. *Id.* ¶ 46. According to the state-court record, Bongiovanni served an untimely answer, which prompted PennyMac to move for default judgment.

Bongiovanni moved to vacate the state court's entry of default and to dismiss the foreclosure complaint. *See* PennyMac Decl., Ex. I, ECF No. 71, (Cross-Motion dated October 24, 2017). In addition, he filed four proposed Orders to Show Cause during the foreclosure litigation. PennyMac Decl., Exs. E, G, J, O. In his state-court filings, Bongiovanni alleged among other things that PennyMac provided a "biased" loan modification favoring the lender and that PennyMac misrepresented the amounts owed on the loan. PennyMac Decl., Ex. N at 4 (Decision and Order dated April 17, 2019). He pressed these fraud allegations

---

[2] The foreclosure action is *PennyMac Corp. v. Danielle Liguori Bongiovanni, et al.*, Index No. 135011/2016.

both as a defense to foreclosure and in support of a cross-
motion for sanctions against PennyMac's counsel for misleading
the court.  *Id.* at 10, 20.  Bongiovanni argued that PennyMac
lacked standing to foreclose because Chase was still the "owner"
of the mortgage loan.  *Id.* at 14.  Bongiovanni also alleged that
he was unable to repay the loan because he experienced financial
hardship as a result of the 2008 financial crisis.  *Id.* at 4,
19.

      Despite these allegations, the state court granted the
lender's application for default judgment.  *Id.* at 22.  The
court found that there was no evidence that PennyMac "hindered
the modification process" and that "there [was] no proof that
[PennyMac's] conduct was intentionally misleading, or deceptive,
or otherwise not in good faith."  *Id.* at 21.  The court also
held that Bongiovanni's claimed inability to repay the loan was
"not a cognizable defense to a foreclosure," and that "any
dispute over the amount owed" on his mortgage loan was an issue
separate from liability, "to be resolved by a referee pursuant
to [Real Property Actions and Proceedings Law] § 1321."  *Id.* at
19.  Accordingly, the court entered judgment against Bongiovanni
and appointed a referee to ascertain the amount due.  *Id.* at 22.
Bongiovanni appealed the state-court ruling; that appeal remains
pending, according to the record before me.

In May 2019, Plaintiff filed this civil action.  He
brings ten claims, alleging violations of the Racketeer
Influenced and Corrupt Organizations Act ("RICO"), the Real
Estate Settlement Procedures Act ("RESPA"), and the Fair Debt
Collection Practices Act ("FDCPA"); as well as state-law claims
for common-law fraud; deceptive business practices in violation
of N.Y. General Business Law § 349; unfair trade practices;
breach of fiduciary duty; failure to supervise; breach of
contract; and "negotiating in bad faith" in violation of N.Y.
Civil Practice Laws & Rules § 3408 ("Mandatory settlement
conference in residential foreclosure actions").  Plaintiff
asserts that this Court has subject matter jurisdiction pursuant
to 28 U.S.C. § 1332(a), based on the diversity of citizenship of
the parties.  Compl. ¶ 7.  He seeks compensatory and punitive
damages.

Defendants move to dismiss for lack of subject matter
jurisdiction under Federal Rule 12(b)(1), arguing first that
there is incomplete diversity of citizenship; and second, that
this action constitutes an improper collateral attack on a
pending state-court proceeding, such that this Court should
abstain from adjudicating Plaintiff's claims pursuant to the
*Colorado River* doctrine.  Defendants also argue that Plaintiff's
claims are barred by the doctrines of res judicata and

collateral estoppel and move to dismiss all causes of action for failure to state a claim pursuant to Federal Rule 12(b)(6).[3]

## II. Legal Standards

A case will be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The standard for evaluating whether diversity jurisdiction lies overlaps with the standard for determining whether abstention is appropriate. "A motion to abstain is considered a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1)." *Krondes v. Nationstar Mortg., LLC*, No. 17-CV-4974, 2018 WL 2943774, at *2 (S.D.N.Y. June 12, 2018), *aff'd*, 789 F. App'x 913 (2d Cir. 2020). A party invoking the jurisdiction of the court bears the burden of proof in a Rule 12(b)(1) motion. *See Thompson v. County of Franklin*, 15 F.3d 245, 249 (2d Cir. 1994).

Only "a plausible claim for relief" survives a 12(b)(6) motion to dismiss. *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 476 (2d Cir. 2009). A claim is plausible

---

[3] Before the Court are two motions to dismiss: one filed jointly by PennyMac Loan Services and PennyMac Corp., and one filed by Rosicki, Rosicki and Associates. Although they were filed separately, Defendants raise similar arguments in support of dismissal pursuant to Rules 12(b)(1) and 12(b)(6).

"when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.  Nonetheless, the Court must construe a *pro se* complaint with "special solicitude" and interpret it to raise the "strongest arguments that [it] suggest[s]." *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006). The "special solicitude" in *pro se* cases "has its limits," however; to state a claim, *pro se* pleadings "still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief." *Amison v. Fox News Channel*, No. 20-CV-4924, 2020 WL 4506023, at *1 (S.D.N.Y. Aug. 4, 2020).

Finally, allegations of fraud are subject to the heightened pleading standard of Rule 9(b).  *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.,* 385 F.3d 159, 178 (2d Cir. 2004).  Under that rule, "a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Thus, to survive dismissal, a plaintiff must specify "'the time, place, speaker, and content of the alleged

misrepresentations;' how the misrepresentations were fraudulent;
and the details that 'give rise to a strong inference that the
defendants had an intent to defraud, knowledge of the falsity,
or a reckless disregard for the truth.'" *Schwartzco Enters. LLC
v. TMH Mgmt.*, LLC, 60 F. Supp. 3d 331, 344 (E.D.N.Y. 2014)
(quoting *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d
Cir. 2013)).

### III. Discussion

#### A.   Diversity Jurisdiction

Defendants argue that this case should be dismissed
for lack of subject matter jurisdiction because diversity of
citizenship is lacking.  *See* PennyMac Br. at 6-7, ECF No. 71-1;
Rosicki Br. at 4, ECF No. 74-7.  Plaintiff invokes only the
diversity jurisdiction of this Court, despite the fact that he
brings certain claims grounded in federal statutes.

Under 28 U.S.C. § 1332(a), there must exist "complete
diversity [of citizenship] between all plaintiffs and all
defendants." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89
(2005).  Complete diversity is lacking because Plaintiff is a
citizen of New York, and he alleges that defendant Rosicki,
Rosicki and Associates is incorporated in New York.

However, three of Plaintiff's causes of action arise
under federal law, and federal question jurisdiction exists
under 28 U.S.C. § 1331 when a plaintiff pleads a colorable claim

"arising under" the Constitution or laws of the United States. *Gallego v. Northland Grp. Inc.*, 814 F.3d 123, 126 (2d Cir. 2016).  This is true even if the *pro se* Plaintiff does not expressly invoke the court's federal-question jurisdiction.  In *Agu v. Rhea*, for example, the amended complaint invoked only diversity jurisdiction.  No. 09-CV-4732, 2010 WL 5186839, at *3 (E.D.N.Y. Dec. 15, 2010).  Noting that the amended complaint purported to assert claims under three federal statutes, however, the court "read[] Plaintiff's *pro se* Amended Complaint for the 'strongest jurisdictional arguments' it suggests, and, having done so, [found] that Plaintiff . . . sufficiently asserted federal question jurisdiction over [the] action."  *Id*. This principle applies here as well.

**B.   Abstention**

Next, Defendants argue that this case should be dismissed pursuant to the *Colorado River* abstention doctrine because "parallel" state-court proceedings are ongoing.  *See* PennyMac Br. at 7-10; Rosicki Br. at 6-8.  In general, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction."  *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).  But the Supreme Court has recognized a number of "extraordinary and narrow exceptions to a federal court's duty to exercise its jurisdiction."

*Woodford v. Cmty. Action Agency of Greene Cty., Inc.*, 239 F.3d 517, 522 (2d Cir. 2001) (internal quotation marks omitted). Under *Colorado River*, "a federal court may abstain from exercising jurisdiction when parallel state-court litigation could result in 'comprehensive disposition of litigation' and abstention would conserve judicial resources." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) (quoting *Colorado River*, 424 U.S. at 817-18).

Cases are parallel when "substantially the same parties are contemporaneously litigating substantially the same issue in another forum," *see id.,* and "there is a substantial likelihood that the state litigation will dispose of *all* claims presented in the federal case." *Courchevel 1850 LLC v. 464 Ovington LLC*, No. 16-CV-7185, 2019 WL 1492347, at *3 (E.D.N.Y. Mar. 31, 2019) (emphasis added) (internal quotation marks omitted).  Dismissal pursuant to *Colorado River* means the federal court has "presumably conclude[d] that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 28 (1983).  Conversely, "[i]f there is any substantial doubt" as to whether the state-court litigation will

11

resolve all of the issues, "it would be a serious abuse of discretion" to dismiss.  *Id.*

Because at least two of Plaintiff's federal claims (his FDCPA and RESPA claims) find no analogue in the state action, I decline to abstain under the *Colorado River* doctrine. *Courchevel 1850 LLC*, 2019 WL 1492347, at *3.  Therefore, I proceed to the merits of Defendants' 12(b)(6) motion.[4]  As set forth below, each of Plaintiff's federal claims must be dismissed for failure to state a claim.

## C.   Plaintiff's Federal Claims

1.   RICO

Plaintiff's RICO claim is based on the allegation that the Defendants engaged in a scheme to defraud — a predicate act under the RICO statute.  Chase initiated the alleged fraud by offering the Bongiovannis (Sebastian and his wife) a favorable loan modification funded by a government assistance program if they made a series of trial payments.  Plaintiff contends that

---

[4] On the record before the Court, a final judgment of foreclosure and sale has not been entered, but there is a final judgment as to Plaintiff's liability for the mortgage loan.  To the extent that Plaintiff's claims here seek to re-litigate issues resolved by the state-court default judgment, the actions are not parallel for the purpose of *Colorado River* abstention "because the parties are not '*contemporaneously* litigating substantially the same issues' in different forums."  *Almazon v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 19-CV-4871, 2020 WL 1151313, at *8 (S.D.N.Y. Mar. 9, 2020) (emphasis in original) (quoting *Roy v. Bank of New York Mellon*, No. 17-CV-6729, 2018 WL 4771898, at *4 (E.D.N.Y. Sept. 30, 2018)).  Such claims may be barred for other reasons, but the Court does not reach this question because, as discussed below, the federal claims fail to state a claim for relief and the Court declines to exercise supplemental jurisdiction over the state-law claims.

the transfer of the loan to PennyMac during the trial period, and PennyMac's refusal to honor Chase's trial offer, constituted fraud.  Compl. ¶¶ 41-43.  Defendants argue that Plaintiff's RICO count is time-barred and fails to state a plausible claim under the RICO statute.

Civil RICO claims are subject to a four-year statute of limitations, which begins to run when a plaintiff discovered, or reasonably should have discovered, the alleged injury.  *E.g.*, *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 148 (2d Cir. 2012).  Defendants argue that the RICO claim accrued, at the latest, on January 9, 2014, when the second Loan Modification Agreement was executed (with PennyMac).[5]  This date is well in excess of four years before this lawsuit was filed on May 31, 2019.  Plaintiff is presumed to have been aware of the terms of the loan modification agreement at the time that he executed it.  *See Done v. Option One Mortg.*, No. 09-CV-4770, 2011 WL 1260820, at *8 n.5 (E.D.N.Y. Mar. 30, 2011) (where alleged RICO injury stemmed from the terms of a loan document, plaintiff was "clearly aware" of the terms at the time he signed it).  Accordingly, the RICO claim is barred under the applicable statute of limitations.

---

[5] Although January 9 was the date of execution, the Loan Modification Agreement states that it is "effective . . . January 1, 2014."

Defendants also argue that even if the RICO claim were not time-barred, it still fails because Plaintiff does not adequately allege the existence of a RICO enterprise, a pattern of racketeering activity, or actual damages.  The RICO statute prohibits a person from conducting or participating in the affairs of an "enterprise" engaged in, or the activities of which affect, interstate or foreign commerce, through a "pattern of racketeering activity" or the "collection of unlawful debt." 18 U.S.C. § 1962(c).  To plead a viable claim, a complaint must allege "'(1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962.'"  *DeFalco v. Bernas,* 244 F.3d 286, 305 (2d Cir. 2001) (quoting *Pinnacle Consultants, Ltd. v. Leucedia Nat'l Corp.*, 101 F.3d 900, 904 (2d Cir. 1996)).

Plaintiff alleges the existence of an enterprise only in conclusory terms.  He identifies each Defendant's role in connection with a single mortgage loan transaction, but does not plausibly allege an ongoing "association-in-fact" with the "purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946, (2009).  At most, he sets out the Defendants' "ongoing business relationships," with one another, which is

14

insufficient to establish a RICO enterprise.  *Bonadio v. PHH Mortg. Corp.*, No. 12-CV-3421, 2014 WL 522784, at *3 (S.D.N.Y. Jan. 31, 2014).  Because Plaintiff fails to adequately allege the enterprise, the Court need not consider whether Plaintiff has properly pleaded the predicate acts.

Accordingly, the RICO claim is time-barred and must also be dismissed for failure to plead a necessary element.

2.   RESPA

Congress enacted the Real Estate Settlement Procedures Act to ensure that homebuyers receive adequate information about costs and fees incurred in real estate transactions. 12 U.S.C. § 2601.  Among other things, the statute mandates certain disclosures in connection with a transfer of mortgage servicing, 12 U.S.C. § 2605, and it prohibits loan servicers from paying or receiving kickbacks pursuant to an agreement to refer settlement business with respect to a federally related mortgage loan.  12 U.S.C. § 2607.

Here, Plaintiff alleges that Chase and PennyMac violated RESPA in the transfer of Plaintiff's loan from Chase to PennyMac by (1) failing to disclose to Plaintiff any pre-transfer loan information in response to his requests, Compl. ¶¶ 41, 100; and (2) paying "kick-backs" as part of the transfer of his loan.  *Id.* ¶ 101.  Plaintiff does not specify which RESPA provision(s) the defendants violated through this alleged

conduct.  He alleges that "Penny Mac Loan Services [sic] only provides Plaintiff with Loan information after the loan was transferred, as such, Plaintiff is refused critical Loan information as it pertains to Loan activity and Loan notes while being serviced by Defendant Chase Bank."  *Id.* ¶ 100.  He also alleges that "kick-backs" occurred "as Defendant Chase Bank sells Plaintiff[] loan Service to Defendants [sic] PennyMac loan services."  *Id.* ¶ 101.  In light of his *pro se* status, the Court construes his allegations as arising under 12 U.S.C. § 2605(e), which, in relevant part, requires loan servicers to respond within five business days to acknowledge receipt of a borrower's "qualified written request" for account information; and 12 U.S.C. § 2607(a), the anti-kickback provision.

    To the extent that these RESPA claims arise out of the alleged loan transfer in 2014, Compl. ¶ 100, they too are time-barred.  An action for a violation of Section 2605 must be brought within three years.  *See* 12 U.S.C. § 2614; *see also*, *e.g.*, *Papapietro v. Popular Mortg. Servicing Co.*, No. 13-CV-2433, 2014 WL 5824682, at *6 (E.D.N.Y. Nov. 10, 2014).  A private action for a violation of Section 2607, the anti-kickback provision, must be brought within one year.  12 U.S.C. § 2614; *see also, e.g.*, *Ledgerwood v. Ocwen Loan Servicing LLC*, No. 15-CV-1944, 2015 WL 7455505, at *2 (E.D.N.Y. Nov. 21, 2015).  As this civil action was filed in 2019, any RESPA claim relating

16

to events in 2014 is outside the applicable statutes of limitations.

Even if these claims were timely, the Complaint fails to plead factual content sufficient to state a RESPA claim. With respect to Section 2605(e), Plaintiff does not allege that he submitted a "qualified written request" to PennyMac at any time, or that PennyMac failed to timely respond to such a request. The closest Plaintiff comes is when he alleges that he "contacted" PennyMac in December 2017 to "request a copy of all servicing Notes in their possession," but on this point the Complaint acknowledges that, in response, PennyMac gave Plaintiff "copies of notes . . . beginning in 2014." Compl. ¶ 58.

With respect to Section 2607(a), a violation of RESPA's anti-kickback provision involves three elements: "(1) a payment or thing of value; (2) given and received pursuant to an agreement to refer settlement business; and (3) an actual referral." *Galiano v. Fid. Nat. Title Ins. Co.*, 684 F.3d 309, 314 (2d Cir. 2012). Plaintiff vaguely alleges that "'kick-backs' occur[red]" in connection with the assignment of Plaintiff's loan from Chase to PennyMac, and that PennyMac, in turn, attempted to "alter or change[] the loan terms" to be "more favorable to Defendants." Compl. ¶ 101. Plaintiff does not identify any specific kickback that was allegedly paid, nor

does he allege the existence of any agreement to refer
settlement business.  Such speculative allegations of a kickback
scheme are insufficient to support a claim for relief.  *E.g.*,
*Galiano*, 684 F.3d at 314.

    3.   <u>FDCPA</u>

       Finally, Plaintiff alleges that Defendants violated
the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e, which
prohibits third-party debt collectors from making certain false
or misleading representations.  PennyMac is alleged to have
misrepresented the outstanding loan principal on Plaintiff's
mortgage statements, and the Rosicki firm is alleged to have
repeated these misrepresentations in the course of the
foreclosure action.  *See* Compl. ¶¶ 103-06.  Specifically,
Plaintiff claims that the Rosicki firm "not only" attempted "to
collect [an] amount far exceeding what was contractually owed,
but filled [sic] Foreclosure proceedings and . . . affirmed
under the penalty of perjury [that] the [allegedly inflated]
amounts were correct."  Compl. ¶ 105.

       Defendants contend that Plaintiff's FDCPA claim, too,
is time-barred and fails to state a claim.  The statute of
limitations for an FDCPA claim is one year.  *See* 15 U.S.C.
§ 1692k(d); *see also*, *e.g.*, *Sanchez v. Ehrlich*, No. 16-CV-8677,
2018 WL 2084147, at *3 (S.D.N.Y. Mar. 29, 2018).  Plaintiff
commenced the instant action on May 31, 2019, alleging that

PennyMac and the Rosicki firm violated the FDCPA by the commencement of the foreclosure action on January 7, 2016. Therefore, this claim is time-barred, as is any FDCPA claim relating to PennyMac's collection efforts prior to the foreclosure action.

Even if Plaintiff's claim fell within the one-year statute of limitations, the FDCPA does not reach the PennyMac defendants' conduct, as alleged.  Because the PennyMac defendants "owned or own [Plaintiff's] mortgage, . . . they are not debt collectors under the FDCPA." *Krondes*, 2018 WL 2943774, at *5.  "Put simply, a debt collector collects debt owed to another person, while a creditor seeks to collect on a debt owed to it." *Johnson-Gellineau v. Steine & Assocs., P.C.*, No. 16-CV-9945, 2019 WL 2647598, at *7 (S.D.N.Y. June 27, 2019), *aff'd sub nom. Johnson-Gellineau v. Stiene & Assocs., P.C.*, 19-2236-CV, 2020 WL 6735286 (2d Cir. Nov. 17, 2020).[6]  Accordingly, courts in the Second Circuit have concluded that entities to which a debt

---

[6] Under the FDCPA, "[t]he term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  "The term 'creditor' means any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another."  *Id.* § 1692a(4).

is owed directly are not debt collectors under the FDCPA.  *E.g.,*
*Gold v. Shapiro, Dicaro & Barak, LLC*, No. 18-CV-6787, 2019 WL
4752093, at *4 (E.D.N.Y. Sept. 30, 2019); *Izmirligil v. Bank of
New York Mellon*, No. CV 11-5591, 2013 WL 1345370, at *4
(E.D.N.Y. Apr. 2, 2013).  That conclusion is inescapable here,
as well.

Therefore, the FDCPA claim must be dismissed as time-
barred and for failure to state a claim.

**B.   State-Law Claims**

Plaintiff also brings state common-law claims for,
*inter alia*, fraud, misrepresentation, and a deceptive-business
claim under New York General Business Law Section 349.  However,
because the parties are not diverse (there are New York
residents on both sides of the litigation), jurisdiction in this
case is based entirely on the causes of action arising under
federal law — all of which have now been dismissed.

A district court "may decline to exercise supplemental
jurisdiction over a claim" if "the district court has dismissed
all claims over which it has original jurisdiction."  28 U.S.C.
§ 1367(c)(3); *see also Carnegie-Mellon Univ. v. Cohill,* 484 U.S.
343, 350 n.7 (1988) ("[I]n the usual case in which all federal-
law claims are eliminated before trial, the balance of factors
to be considered under the pendent jurisdiction doctrine —
judicial economy, convenience, fairness, and comity — will point

20

toward declining to exercise jurisdiction over the remaining
state-law claims."). Having dismissed all of Plaintiff's
federal claims, I decline to exercise supplemental jurisdiction
over the remaining state-law claims. *See In re Merrill Lynch
Ltd. Partnerships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998)
(affirming district court's declination of supplemental
jurisdiction where RICO claims were dismissed as time-barred).[7]

### IV. Plaintiff's Motion to Amend

On January 4, 2021, Plaintiff filed a motion to amend
his Complaint and add a new defendant, Kondaur Capital
("Kondaur"), attaching a proposed amended pleading. Plaintiff
alleges that Kondaur purchased and began servicing Plaintiff's
loan in or around November 2019. *See* Second Motion to Amend,
ECF No. 76. Plaintiff may now amend his complaint only with
leave of the Court. *See* Fed. R. Civ. P. 15(a).[8]

Generally speaking, leave to amend should be "freely"
granted, Fed. R. Civ. P. 15(a)(2), and a party may be added "at
any time" and on such terms as are "just." Fed. R. Civ. P. 21;
*see also Momentum Luggage & Leisure Bags v. Jansport, Inc.*, No.

---

[7] The Court therefore does not reach the question of whether some or all
of the state-law claims are barred by the doctrines of res judicata or
collateral estoppel.

[8] Plaintiff already amended his complaint once as of right, *see* ECF No.
5, and requested leave to file a second amended complaint by letter dated
February 23, 2020. *See* ECF No. 68. This request was denied by Magistrate
Judge Orenstein "without leave to renew once the plaintiff includes a
proposed amended pleading for the court to consider." *Id.*

00-CV-7909, 2001 WL 58000, at *2 (S.D.N.Y. Jan. 23, 2001) ("In
deciding whether to allow joinder, the Court is guided by the
same standard of liberality afforded to motions to amend
pleadings under Rule 15." (internal quotation marks omitted)).
The Second Circuit has stated that "[w]hen a motion to dismiss
is granted, the usual practice is to grant leave to amend the
complaint." *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53 (2d Cir.
1999).  At the same time, leave should be denied where amendment
would be futile.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).
Amendment is futile when "the proposed amended claim would not
withstand a motion to dismiss." *See Franco v. Diaz*, 51 F. Supp.
3d 235, 244 (E.D.N.Y. 2014) (citing *Lucente v. IBM,* 310 F.3d
243, 258 (2d Cir. 2002)).  Moreover, courts "will deny a request
[to join a party] that comes so late in the litigation that it
will delay the case or prejudice any of the parties to the
action." *City of Syracuse v. Onondaga Cty.*, 464 F.3d 297, 308
(2d Cir. 2006) (internal citations omitted).

        Plaintiff's allegations against Kondaur exhibit
several of the same fatal shortcomings as his allegations
against the existing defendants.  For example, Plaintiff sets
forth no factual basis to conclude that Kondaur acted as part of
the same alleged enterprise.  Indeed, Plaintiff says nothing
about the relationship between Kondaur and any existing
defendant, apart from alleging that Kondaur purchased and began

servicing the loan from PennyMac, which he posits (without additional factual content) is proof of a partnership designed to relieve the existing Defendants of the "pressure of these Proceedings" and perpetuate the alleged fraud. *See* Second Motion to Amend ¶ 18.

Even if the proposed amended complaint had sufficiently spoken to Kondaur's role in the enterprise, its allegations of predicate criminal conduct again fall short of Rule 9(b)'s requirements.  Plaintiff does not describe the contours of Kondaur's alleged fraud scheme with particularity. For example, Plaintiff does not allege that Kondaur ever agreed to grant the loan modification Plaintiff requested.  Plaintiff claims that Kondaur rejected Plaintiff's proposed loan modification documents, and then sold his loan (again).  But these allegations do not give rise to a valid RICO claim.

Because this is Plaintiff's first set of allegations against Kondaur, however, and because Plaintiff is proceeding *pro se* (and therefore entitled to some forbearance), the Court denies the motion to amend without prejudice.  Any newly-filed complaint against Kondaur should address the pleading shortcomings noted above.

## V. Conclusion

For the reasons set forth above, Defendants' motions to dismiss are granted without prejudice as to all causes of action in the Amended Complaint.

The Court grants Plaintiff thirty days to amend his complaint to properly state a claim.  If Plaintiff fails to plead sufficient facts in his new complaint, or if he fails to file a new complaint within thirty days, he will not have another opportunity to re-plead, and the Court will enter judgment.  The Clerk of Court is respectfully directed to update the case caption to replace "JPMorgan Chase Bank, N.A." with "PennyMac Corp."


SO ORDERED.


                              /s Eric Komitee
                              ERIC KOMITEE
                              United States District Judge


Dated:     March 30, 2021
           Brooklyn, New York