UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
SEBASTIAN BONGIOVANNI,                       :
                                             :
                          Plaintiff,         :
                                             :        **REPORT AND RECOMMENDATION**
           -against-                         :
                                             :        19 Civ. 3260 (EK) (VMS)
PENNYMAC CORP., PENNYMAC LOAN                 :
SERVICES, LLC and ROSICKI, ROSICKI AND       :
ASSOCIATES, P.C.,                            :
                                             :
                          Defendants.        :
-------------------------------------------------------------- x

**Vera M. Scanlon, United States Magistrate Judge:**

Plaintiff Sebastian Bongiovanni ("Plaintiff") brings this action pro se against Defendants

PennyMac Corp., PennyMac Loan Services, LLC (collectively, "PennyMac") and the law firm

of Rosicki, Rosicki and Associates, P.C. ("Rosicki"). See ECF No. 87 ("Second Amended

Complaint" or "SAC"). Plaintiff also adds allegations regarding Kondaur Capital in the Second

Amended Complaint, but Plaintiff has not added Kondaur Capital as a party to this action. See

ECF No. 91; SAC ¶¶ 76-92. The Court therefore does not discuss these allegations.

Plaintiff's claims arise out of a mortgage loan that he executed with JP Morgan Chase

Bank, N.A. ("Chase")[1] that was later assigned to PennyMac. He alleges that Defendants

defrauded him in connection with the origination, servicing, transfer and foreclosure of the loan.

PennyMac and Rosicki separately each move to dismiss pursuant to Federal Rule of Civil

---

[1] Plaintiff filed a stipulation of dismissal with prejudice as to Chase on February 24, 2020, and
Chase was dismissed from this action on February 29, 2020. See ECF No. 67; Order dated
2/29/2020.

Procedure 12.[2]  See ECF Nos. 92, 95.  Plaintiff opposes.[3]  See ECF No. 96.  Defendants reply.[4]

See ECF Nos. 97, 98.  For the following reasons, this Court respectfully recommends that

Defendants' motions to dismiss be granted.

## I.  BACKGROUND

### a.  Procedural History

In May 2019, Plaintiff commenced this action, then he filed an amended complaint.  See

ECF Nos. 1, 5.  The amended complaint brought claims for violations of the Racketeer

Influenced and Corrupt Organizations Act, the Real Estate Settlement Procedures Act, and the

Fair Debt Collection Practices Act, as well as state-law claims for common-law fraud, deceptive

business practices in violation of N.Y. General Business Law § 349, unfair trade practices,

breach of fiduciary duty, failure to supervise, breach of contract and "negotiating on bad faith" in

violation of N.Y. Civil Practice Laws & Rules § 3408 ("Mandatory settlement conference in

residential foreclosure actions").  See generally ECF No. 5.  On Defendants' motions, the

District Court dismissed the amended complaint.  See ECF No. 81; Bongiovanni v. PennyMac

Corp., No. 19 Civ. 3260 (EK) (VMS), 2021 WL 1193043 (E.D.N.Y. Mar. 30, 2021).  The

District Court's Memorandum and Order granted Plaintiff thirty days to amend his complaint to

state a claim properly.  See ECF No. 81 at 24; Bongiovanni, 2021 WL 1193043, at *9.  Plaintiff

---

[2] Defendant PennyMac's opening papers include Notice of Motion, ECF No. 92; Declaration of
Timothy Salter, ECF No. 92-2; PennyMac's Exhibits A-Q ("PennyMac Ex. [letter]"), ECF Nos.
92-3 through 92-20; and PennyMac's Memorandum in Support ("PennyMac Memo."), ECF No.
92-1.  Defendant Rosicki's opening papers include Notice of Motion, ECF No. 95; Declaration
of Andrew Morganstern, ECF No. 95-1; Rosicki's Exhibits A-H, ECF Nos. 95-2 through 95-9;
and Rosicki's Memorandum in Support ("Rosicki Memo."), ECF No. 95-10.

[3] Plaintiff's opposition papers consist of an Opposition Memorandum ("Opp."), ECF No. 96.

[4] Defendant PennyMac's reply papers consist of a Reply Memorandum ("PennyMac Reply"),
ECF No. 97 and one exhibit, ECF No. 97-1.  Defendant Rosicki's reply papers consist of a Reply
Memorandum, ECF No. 98.

was granted extensions through July 12, 2021, to file his second amended complaint.  See Orders

dated 5/21/2021, 7/6/2021.  Plaintiff timely filed his Second Amended Complaint.  See SAC.

The Second Amended Complaint renews Plaintiff's claims for common-law fraud, deceptive

business practices and "negotiating on bad faith," and adds new claims under the Fair Credit

Reporting Act ("FCRA") and certain federal criminal statutes.  The four causes of action in the

Second Amended Complaint are 1) "Fraud, Conspiracy to Commit Fraud 18 US Code 1349,

Consumer Fraud, Mail Fraud, Conspiracy to commit Consumer fraud and Negligence Fraud and

swindles 18 US Code 1038, 1341; Mail Fraud and False Statements"; 2) "Deceptive Business

Practices"; 3) "FCRA Fair Debt Reporting Act, 15 USC 1681"; and 4) "Negotiating on bad

Faith."  SAC ¶ 13.

Defendants move to dismiss the Second Amended Complaint.  PennyMac argues that this

Court should dismiss the Second Amended Complaint under Fed. R. Civ. P. 12(b)(6) because 1)

Plaintiff does not state claims under 18 U.S.C. §§ 1038, 1341 or 1349 because these criminal

statutes do not support private claims; 2) Plaintiff's common-law fraud, deceptive business

practices and "negotiating on bad faith" claims are barred by res judicata and collateral estoppel;

3) Plaintiff has failed to state a claim for common-law fraud and deceptive business practices; 4)

New York law does not recognize "bad faith negotiations" under N.Y. C.P.L.R § 3408; and 5)

Plaintiff's FCRA claim fails as a matter of law because Plaintiff fails to identify the specific

provisions of the FCRA that PennyMac Loan Services, LLC ("PennyMac Loan Services")

allegedly violated, because the claim is time-barred, because Credit Karma is not a credit

reporting agency under the FCRA and because Plaintiff has failed to establish standing to bring

an FCRA claim.  See PennyMac Memo. at 1-2; PennyMac Reply at 7-10.  PennyMac argues that

this Court should abstain from exercising jurisdiction and dismiss the Second Amended

Complaint pursuant to Fed. R. Civ. P. 12(b)(1) under the Colorado River doctrine. See

PennyMac Memo. at 2. PennyMac alternatively argues that this Court should decline to exercise

supplemental jurisdiction over Plaintiff's state-law claims because Plaintiff's federal-law claims

fail as a matter of law, and the Court does not have subject matter jurisdiction under 28 U.S.C. §

1332(a) due to the lack of complete diversity. See id. Rosicki makes similar arguments in its

motion to dismiss. Rosicki Memo. at 5-6, 8-16. It also argues, with respect to Plaintiff's state-

law claims, that this Court lacks subject matter jurisdiction under the Rooker-Feldman doctrine

and that this Court should abstain from hearing this case under the Younger doctrine. Id. at 6-8.

### b. Factual Background

The following facts are taken from the Second Amended Complaint and attached

exhibits, unless otherwise noted, and are presumed to be true for purposes of Defendants'

motions.

### i. Plaintiff's Loan And Credit Issues

On November 13, 2007, Plaintiff and his wife closed on a $637,500.00 mortgage loan

from Chase to finance the purchase of a home in Staten Island. SAC ¶¶ 14-15. At the time of

closing, Plaintiff learned that the interest rate and other loan terms would be less favorable than

he had expected. Id. ¶ 15. Still, he was assured that he would qualify for a lower interest rate

after six months of on-time payments. Id. This lower rate never materialized, despite his timely

payments over the first six months and his requests for a loan modification. See id. ¶ 16.

In late 2009, Plaintiff began to fall behind on mortgage payments. Id. ¶ 35. He asked

Chase to modify his payment obligations because his income could no longer support them. See

id. ¶¶ 34-35. On or about October 1, 2011, Plaintiff entered into a written Loan Modification

Agreement with Chase, but Plaintiff alleges that the terms remained too burdensome and that the

modification did not "credit" him adequately for the payments he had previously made.  Id. ¶¶ 36-37.  After falling further behind on the loan, in July 2013, Plaintiff received an offer from Pamela Gant at Chase to participate in Chase's "Trial Period Plan," which he understood would make his mortgage "payments more affordable for the long term" if he made three "trial payments" on time.  Id. ¶¶ 39-40 & Ex. 1.  The trial plan was funded by a government program developed to assist consumers.  Id. ¶ 40.  Plaintiff made the first trial payment to Chase; thereafter, however, he was notified that his mortgage loan had been assigned to PennyMac.  Id. ¶ 41.  Following the assignment, Plaintiff made the second and third trial payments to PennyMac, based on his understanding that his loan modification would be "transferred correctly."  Id.

Plaintiff received multiple telephone calls at his home from PennyMac Loan Services's Modification Department, asking Plaintiff to accept new modification terms which Plaintiff believed were less favorable than those he had been offered by Pamela Gant at Chase.  Id. ¶ 42. PennyMac Loan Services eventually agreed to modify Plaintiff's loan in accordance with the terms offered by Chase.  Id.  Plaintiff entered into a written Loan Modification Agreement with PennyMac Loan Services, effective January 1, 2014.  Id. ¶ 43 & Ex. 2.  Plaintiff requested a fully executed copy of the Loan Modification Agreement multiple times from PennyMac Loan Services, which he received.  Id. ¶¶ 44, 46 & Ex. 2.  Although Plaintiff states that he believes that PennyMac Loan Services "never had intentions of honoring the agreement signed by the parties," Plaintiff concedes that his monthly mortgage statements represented the correct principal balance owed amount, at least from 2014 through 2016.  See id. ¶¶ 45-46.

Plaintiff alleges that PennyMac Loan Services reported the loan principal balance owed incorrectly on his credit report in 2014, which PennyMac Loan Services then corrected.  Id. ¶ 46.

PennyMac Loan Services reported the loan principal balance owed correctly on Plaintiff's credit report through 2016.  See id.  In February 2019, Plaintiff filed a complaint with Credit Karma and a request that PennyMac Loan Services correct the amount owed on Plaintiff's credit report; PennyMac Loan Services informed Credit Karma that this amount was correct.  Id. ¶ 49.  In or around June 2019, Plaintiff applied for a job, and his credit report was run in connection with his job application.  Id. ¶ 48.  Plaintiff alleges PennyMac Loan Services "was reporting Plaintiff owed almost one million dollars . . . or about 40 percent higher than the correct reportable amount."  Id.  Plaintiff again filed a complaint with Credit Karma, and Plaintiff requested that PennyMac Loan Services correct the amount on Plaintiff's credit report, but PennyMac Loan Services again reported to Credit Karma the amount on Plaintiff's credit report was correct.  Id. ¶ 50.  In June 2019, Plaintiff applied for an SBA Business Loan, but it was denied because of the outstanding debt on Plaintiff's credit report.  Id. ¶ 51.

### ii.   The Foreclosure Action Against Plaintiff's Property

On January 7, 2016, PennyMac, represented by Rosicki, filed a foreclosure action against Plaintiff and his wife in New York State Supreme Court, Richmond County.  Id. ¶¶ 54-55. Plaintiff alleges that, in commencing the foreclosure action, Defendants inflated the loan balance owed by more than $240,000.00.  Id. ¶ 55.  Plaintiff alleges that, in 2016, Rosicki attempted to "cajole" Plaintiff through email correspondence into agreeing to pay amounts that exceeded the terms of his Loan Modification Agreement with PennyMac.  Id. ¶¶ 58-59, 61, 63.  Plaintiff also alleges that Rosicki misrepresented the amount contractually owed by Plaintiff to PennyMac in settlement conferences.  Id. ¶ 66.  According to the state-court record, Plaintiff served an untimely answer, which prompted PennyMac to move for default judgment.  See PennyMac Memo. at 3-4.

Plaintiff moved to vacate the state court's entry of default and to dismiss the foreclosure complaint.  See PennyMac Ex. H.  In addition, he filed four proposed orders to show cause during the foreclosure litigation.  PennyMac Exs. D, F, K, N.  In his state-court filings, Plaintiff alleged, among other things, that PennyMac provided a "biased" loan modification favoring the lender and that PennyMac misrepresented the amounts owed on the loan.  PennyMac Ex. M at 4. He pressed these fraud allegations both as a defense to foreclosure and in support of a cross-motion for sanctions against PennyMac's counsel for misleading the court.  Id. at 10, 20. Plaintiff argued that PennyMac lacked standing to foreclose because Chase was still the "owner" of the mortgage loan.  Id. at 14.  Plaintiff also alleged that he was unable to repay the loan because he experienced financial hardship as a result of the 2008 financial crisis.  Id. at 4, 19.

Despite these allegations, the state court granted the lender's application for a default judgment.  Id. at 22.  The court found that there was no evidence that PennyMac "hindered the modification process" and that "there [was] no proof that [PennyMac's] conduct was intentionally misleading, or deceptive, or otherwise not in good faith."  Id. at 21.  The court also held that Plaintiff's claimed inability to repay the loan was "not a cognizable defense to a foreclosure," and that "any dispute over the amount owed" on his mortgage loan was an issue separate from liability, "to be resolved by a referee pursuant to [Real Property Actions and Proceedings Law] § 1321."  Id. at 19.  The court entered judgment against Plaintiff and appointed a referee to ascertain the amount due.  Id. at 22.  Plaintiff appealed the state-court ruling; that appeal remains pending, according to the record before this Court.

## II.     LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 570 (2007)); see Mandala v. NTT Data, Inc., 975 F.3d 202, 207 (2d Cir. 2020).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citation omitted).  Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679 (citation omitted); see Rothstein v. UBS AG, 708 F.3d 82, 94 (2d Cir. 2013).

"A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks & citations omitted); see Thompson v. United States, 795 F. App'x 15, 17 (2d Cir. 2019).  The "duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it." Geldzahler v. N.Y. Med. Coll., 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (citation & internal quotation marks omitted).  "Therefore, a court should 'not hesitate to dismiss a pro se complaint if it fails altogether to satisfy the pleading standard.'" Thompson v. Equifax Info. Servs. LLC, No. 20 Civ. 6101 (RPK) (ST), 2022 WL 2467662, at *3 (E.D.N.Y. Feb. 24, 2022) (quoting Henry v. Davis, No. 10 Civ. 7575 (PAC) (JLC), 2011 WL 3295986, at *2 n.5 (S.D.N.Y. Aug. 1, 2011), R&R adopted, 2011 WL 5006831 (S.D.N.Y. Oct. 20, 2011)).  Where better pleadings would not cure the deficiencies in a pro se plaintiff's complaint, a court may dismiss those claims with prejudice.  See Braga v. N.Y.C. Police Dep't, No. 21 Civ. 2602 (RPK) (LB), 2022 WL 2441230, at *3 (E.D.N.Y. July 5, 2022); see also Thorsen v. Sons of Norway, 996 F. Supp.

2d 143, 167 (E.D.N.Y. 2014) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice." (quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991)).

## III.   DISCUSSION

### a.  Abstention

Defendants renew their argument made in the first round of motion-to-dismiss briefing that this case should be dismissed pursuant to the Colorado River abstention doctrine because "parallel" state-court proceedings are ongoing.  See PennyMac Memo. at 20-23; Rosicki Memo. at 8.  As discussed in the District Court's prior Memorandum and Order, "a federal court may abstain from exercising jurisdiction when parallel state-court litigation could result in 'comprehensive disposition of litigation' and abstention would conserve judicial resources." Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist., 673 F.3d 84, 100 (2d Cir. 2012) (quoting Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817-18 (1976)); see ECF No. 81 at 11; Bongiovanni, 2021 WL 1193043, at *4.  Cases are only considered "parallel" when "substantially the same parties are contemporaneously litigating substantially the same issue in another forum," see Niagara Mohawk Power Corp., 673 F.3d at 100 (citation omitted), and "there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case."  Courchevel 1850 LLC v. 464 Ovington LLC, No. 16 Civ. 7185 (NGG) (RER), 2019 WL 1492347, at *3 (E.D.N.Y. Mar. 31, 2019) (emphasis added) (internal quotation marks omitted); see ECF No. 81 at 11; Bongiovanni, 2021 WL 1193043, at *4.  As before, at least one of Plaintiff's federal claims, the FCRA claim, "find[s] no analogue in the state action."  See ECF No. 81 at 12; Bongiovanni, 2021 WL 1193043, at *4; Courchevel 1850 LLC, 2019 WL 1492347, at *3.  I therefore respectfully recommend that the Court decline

to abstain under the <u>Colorado River</u> doctrine and proceed to the merits of the motion to dismiss.[5]

### b. Plaintiff's FCRA Claim Should Be Dismissed

#### i. Failure To State A Claim

The FCRA regulates consumer credit reporting agencies ("CRAs") to ensure accuracy, confidentiality, relevancy and proper utilization of consumer credit information. <u>See</u> 15 U.S.C. § 1681(b). It "places distinct obligations on three types of entities: consumer reporting agencies, users of consumer reports, and furnishers of information to consumer reporting agencies." <u>Tescher v. Experian Info. Sols., Inc.</u>, No. 21 Civ. 2266 (PMH), 2022 WL 564048, at *4 (S.D.N.Y. Feb. 23, 2022) (citation omitted). Plaintiff alleges claims under the FCRA against Defendant PennyMac Loan Services as an alleged furnisher of information. <u>See</u> SAC ¶¶ 120-25.

Although Plaintiff does not cite to any specific provisions of the FCRA, the Court reads Plaintiff's complaint as alleging that PennyMac Loan Services violated a duty to report information accurately to CRAs in violation of 15 U.S.C. § 1681s-2(a), and that PennyMac Loan Services had a duty to investigate after receiving notice of a credit dispute from a CRA under § 1681s-2(b). <u>See id.</u> At the outset, the Court notes that any claim that PennyMac Loan Services

---

[5] Rosicki renews its arguments that the Court lacks subject matter jurisdiction under the <u>Rooker-Feldman</u> doctrine and that the Court should abstain under the <u>Younger</u> doctrine. Rosicki Memo. at 6-8. All Defendants renew their arguments that Plaintiff's state-law claims are barred by <u>res judicata</u> and collateral estoppel. <u>See</u> PennyMac Memo. at 8-12; Rosicki Memo. at 9-10. This District Court previously declined to reach these questions in its Memorandum and Order on the first motions to dismiss because it dismissed all of Plaintiff's federal claims and declined to exercise supplemental jurisdiction over Plaintiff's state-law claims. <u>See</u> ECF No. 81 at 12 n.4, 21 n.7; <u>Bongiovanni</u>, 2021 WL 1193043, at *4 n.4, *7 n.7. For the purposes of "maintain[ing] consistency and avoid[ing] reconsideration of matters once decided during the course of a single continuing lawsuit," this Court declines to address these same questions because it also recommends dismissing the federal claims for failure to state a claim and declining to exercise supplemental jurisdiction over the state-law claims. <u>See</u> <u>Devilla v. Schriver</u>, 245 F.3d 192, 197 (2d Cir. 2001) (quoting 18 Wright, Miller & Cooper, <u>Federal Practice & Procedure</u> § 4478 at 788).

violated 15 U.S.C. § 1681s-2(a) fails as a matter of law.  The statute itself states that Subsection

(a) "shall be enforced exclusively . . . by the Federal agencies and officials and the State officials

identified in section 1681s of this title."  15 U.S.C. § 1681s-2(d).  "[T]he statute plainly restricts

enforcement of that provision to federal and state authorities."  Longman v. Wachovia Bank,

N.A., 702 F.3d 148, 151 (2d Cir. 2012).  "[I]t is well-settled that there is no private cause of

action for alleged violations of Section 1681s-2(a)."  See Perez v. Experian, No. 20 Civ. 9119

(PAE) (JLC), 2021 WL 4784280, at *6 (S.D.N.Y. Oct. 14, 2021) (citation omitted), R&R

adopted, 2021 WL 5088036 (S.D.N.Y. Nov. 2, 2021).

        Pursuant to 15 U.S.C. § 1681s-2(b), a claim may be stated only if a plaintiff shows that

"(1) the furnisher [of information] received notice of a credit dispute from a credit reporting

agency, and (2) the furnisher thereafter acted in willful or negligent noncompliance with the

statute."  Nguyen v. Ridgewood Sav. Bank, 66 F. Supp. 3d 299, 305 (E.D.N.Y. 2014) (internal

quotation marks & citation omitted).  The furnisher's duty to investigate as set forth in Section

1681s-2(b) "is triggered only after a furnisher of information receives notice from a credit

reporting agency of a consumer's dispute."  Mendy v. JP Morgan Chase & Co., No. 12 Civ. 8252

(PGG), 2014 WL 1224549, at *5 (S.D.N.Y. Mar. 24, 2014).  The FCRA defines a credit

reporting agency as "any person which, for monetary fees, dues, or on a cooperative nonprofit

basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer

credit information or other information on consumers for the purpose of furnishing consumer

reports to third parties, and which uses means or facility of interstate commerce for the purpose

of preparing or furnishing consumer reports."  15 U.S.C. § 1681a(f).

        Plaintiff's FCRA claim, as pleaded, is not viable.  Plaintiff describes Credit Karma as an

"on-line [sic] company offering credit reporting services to consumers and help customers [sic]

repair negative credit scores." SAC ¶ 49. Credit Karma is, therefore, "a consumer-facing platform for personal financial management, not a 'consumer reporting agency' within the meaning of the FCRA." Allen v. Toyota Motor Credit Corp., No. 19 Civ. 3062 (SK), 2020 WL 6260011, at *3 (N.D. Cal. Sept. 17, 2020) (citing Spellicy v. Doe #1 Debt Collector, No. 19 Civ. 608 (MAD) (TWD), 2020 WL 3060830, at *5 (N.D.N.Y. Jun. 9, 2020), R&R adopted, 2020 WL 5669033 (N.D.N.Y. Sept. 24, 2020)); see 15 U.S.C. § 1681a(f). As Plaintiff does not plead that Credit Karma is a CRA as defined by the FCRA, his claim based on his notice to Credit Karma is not legally viable. See 15 U.S.C. § 1681a(f); Allen, 2020 WL 6260011, at *3.

> Plaintiff states in his Opposition that Credit Karma
>
> allows consumers direct access to Experian Credit reporting agency and other reporting agencies; whereby through the portal allows a consumers [sic] to file credit related complaints direct to Experian and the other agencies; thereafter Experian and other credit agencies respond in email format; [and the] credit karma portal delivers the response email directly from Experian to the Consumer[.] Lastly, PennyMac did response [sic] to Experian's inquire [sic] as it pertains to Plaintiffs [sic] complaint and after review, Defendant found the reporting by Defendants to be accurate; Defendant refused to make corrections.

Opp. at 16. Even given the liberal pleading standards afforded to pro se litigants, these additional allegations fall short of stating an FCRA claim.[6] Plaintiff does not plead that Credit Karma sent Plaintiff's complaint to a credit reporting agency such that a credit reporting agency then sent a notice of a credit dispute to PennyMac Loan Services. The notice of dispute sent to the furnisher must come from a credit reporting agency, not Credit Karma and not Plaintiff

---

[6] Plaintiff cannot amend his pleading by asserting new facts or theories in a brief. See Alexander v. Cent. Islip Sch. Dist., No. 18 Civ. 2521 (JS) (ARL), 2021 WL 4340730, at *7 (E.D.N.Y. Sept. 22, 2021); Doe v. Holy Bagel Café II, Inc., No. 15 Civ. 3620 (RRM) (JMW), 2021 WL 4463025, at *6 (E.D.N.Y. Sept. 29, 2021) ("Since a brief is a not a pleading under Fed. R. Civ. Proc. 7(a) . . . a plaintiff may not amend his pleading through his brief.") (internal quotation marks & citation omitted)); Fac., Alumni, & Students Opposed to Racial Preferences v. New York Univ. L. Rev., No. 18 Civ. 9184 (ER), 2020 WL 1529311, at *7 (S.D.N.Y. Mar. 31, 2020) ("It is well established in this district that a plaintiff cannot amend his pleading in his opposition briefs." (citation omitted)), aff'd sub nom. Fac. v. New York Univ., 11 F.4th 68 (2d Cir. 2021).

himself.  See Allen, 2020 WL 6260011, at *3; Nguyen, 66 F. Supp. 3d at 305; SAC ¶¶ 49-50.

To make out a claim, Plaintiff would have to plead that PennyMac Loan Services "received

notice of a credit dispute from a credit reporting agency" itself, such as Equifax, Experian or

TransUnion, and, thereafter, PennyMac Loan Services acted willfully or negligently by not

complying with the investigation procedures outlined in the statute.  See Nguyen, 66 F. Supp. 3d

at 305; 15 U.S.C. § 1681s-2(b).  Plaintiff does not name a credit reporting agency that sent

PennyMac Loan Services a notice of credit dispute; therefore, he fails to make out an FCRA

claim.

### ii.  Statute Of Limitations

PennyMac also argues that Plaintiff's FCRA claim is time-barred.  PennyMac Memo. at

16-17.  A claim arising under the FCRA must be brought "not later than the earlier of: (1) 2 years

after the date of discovery by the plaintiff of the violation that is the basis for such liability; or

(2) 5 years after the date on which the violation that is the basis for such liability occurs."  15

U.S.C. § 1681p.  "The shorter two year-year limitation period runs from the date that [the

plaintiff] was on 'inquiry notice' of an FCRA violation."  Andresakis v. Cap. One Bank (USA)

N.A., No. 09 Civ. 8411 (DAB) (FM), 2011 WL 846830, at *3 (S.D.N.Y. Feb. 3, 2011), R&R

adopted, 2011 WL 1097413 (S.D.N.Y. Mar. 23, 2011).  "[G]enerally, liability for a 15 U.S.C. §

1681s-2(b) violation arises 30 days after the furnisher of information does not comply with its

obligations outlined in § 1681s-2(b)(1)(A)-(D)."  Sweitzer v. Am. Express Centurion Bank, 554

F. Supp. 2d 788, 795 (S.D. Ohio 2008) (citations omitted); 15 U.S.C. §§ 1681s-2(b)(2) &

1681i(a)(1).

Plaintiff alleges that he discovered that his credit was reported incorrectly in "early

2019."  SAC ¶ 125.  Plaintiff alleges that in February 2019, he filed his first complaint with

Credit Karma, and PennyMac Loan Services responded to the dispute.  Id. ¶ 49.  PennyMac Loan

Services's liability under 15 U.S.C. § 1681s-2(b), if any, would have arisen thirty days after it

was notified of the dispute by a credit reporting agency (assuming PennyMac Loan Services was

notified by a credit reporting agency), and Plaintiff's claim under 15 U.S.C. § 1681s-2(b) would

have accrued in March 2019, at the latest.  As such, Plaintiff's two-year statute of limitations

would have expired March 2021, at the latest.

   Plaintiff argues that he timely asserted his FCRA claim on January 4, 2021—prior to

March 2021—when he filed a motion to amend the amended complaint and attached a copy of

the proposed pleading, which contained an FCRA claim.[7]  See Opp. at 18; ECF No. 76  The

Court, after reviewing the proposed amended complaint at ECF No. 76-1 and finding it suffered

from "several of the same fatal shortcomings" as the pleading deficiencies in the amended

complaint, denied Plaintiff's motion to amend.  See ECF No. 81 at 22-23; Bongiovanni, 2021

WL 1193043, at *8.  "[A] plaintiff's filing of a motion to amend . . . will toll the applicable

statute of limitations for that claim."  See Pearlstein v. Blackberry Ltd., No. 13 Civ. 7060 (CMK)

(HP), 2022 WL 1000314, at *5 (S.D.N.Y. Apr. 4, 2022) (internal quotation marks & citation

omitted).  Although Plaintiff's motion to amend was denied, it was without prejudice, and the

Court granted Plaintiff thirty days to amend his complaint as well as additional extensions to do

so through July 12, 2021—the date of Plaintiff's Second Amended Complaint.  See Arista

---

[7] Plaintiff appears to alternatively argue that his claim is timely because the Second Amended
Complaint should have stated that Plaintiff filed his first complaint with Credit Karma in June
2019 instead of February 2019, and that June 2019 was also when Plaintiff first became aware
that PennyMac Loan Services was allegedly misreporting Plaintiff's principal balance owed such
that it impacted his credit score.  See Opp. at 15-17.  This argument need not be considered
because, as discussed, supra n.6, Plaintiff may not amend his Second Amended Complaint in a
brief.  See Alexander, 2021 WL 4340730, at *7; Holy Bagel Café II, 2021 WL 4463025, at *6;
Fac., Alumni, & Students Opposed to Racial Preferences, 2020 WL 1529311, at *7.

14

Techs., Inc. v. Arthur D. Little Enters., No. 95 Civ. 789 (ADS), 1999 U.S. Dist. LEXIS 17694, at

*10-11 (E.D.N.Y. Nov. 12, 1999); Perez v. Paramount Commc'ns, Inc., 92 N.Y.2d 749, 753-56

(N.Y. 1999) (holding that since filing the motion to amend the complaint provided notice of the

substance of the claims, and since the plaintiff was unable to control the speed with which the

court ruled on the motion, the motion for leave to amend the complaint tolled the statute of

limitations until entry of an order deciding the motion).  On this record, Plaintiff's FCRA claim

is not time-barred because he filed a motion to amend before the two-year statute-of-limitations

expired, and the statute of limitations was tolled.

### iii.  Standing

PennyMac additionally argues on reply that Plaintiff does not have Article III standing to

assert an FCRA claim because Plaintiff fails to allege a concrete injury-in-fact.  PennyMac Reply

at 7-10.  In summary, PennyMac argues that, because Plaintiff argues in his opposition that he

intended to allege that he first made his complaint about the purported error on his credit in June

2019 after Plaintiff was denied the job by Credit Forte when it ran his credit, the denial of

employment cannot be said to be an injury that resulted from an FCRA violation, because it

occurred first in time.  See id. at 9.  PennyMac further argues that Plaintiff's June 2019

application for an SBA Business Loan that was denied due to the outstanding debt listed on his

credit report cannot support an FCRA claim because cognizable damages under the FCRA do not

include damages to a consumer's business.  See id. at 9-10.

If it is true that Plaintiff first reported the credit dispute in June 2019 after being denied

employment by Credit Forte, it may be the case that "[t]he causal connection between his loss of

job opportunity and [the FCRA] violation[] is too tenuous to support an award of lost wages as

actual damages." Dinoto v. Rockland Fin. Mtg. Co., No. 06 Civ. 1132 (MRK) (WIG), 2007 WL

2460674, at *5 (D. Conn. Aug. 2, 2007), R&R adopted, 2007 WL 2667318 (D. Conn. Aug. 21, 2007).  But that is not what the Second Amended Complaint states—it currently alleges that Plaintiff first complained of the alleged credit error in February 2019, and after receiving the complaint, PennyMac Loan Services declined to change his credit report; thereafter, Plaintiff was denied a job opportunity based on his allegedly incorrectly reported outstanding debt.  See SAC ¶¶ 48-50.  As currently stated, this is sufficient to plead damages to meet the injury-in-fact requirement for standing.

I respectfully recommend that Plaintiff's FCRA claim be dismissed without prejudice and with leave to file an amended complaint within thirty days of the District Court's adoption of this Report and Recommendation, if it is adopted, if Plaintiff can cure his pleading deficiencies.

### c.  Plaintiff's Federal-Criminal-Fraud Claims Should Be Dismissed

It is difficult to discern the legal basis upon which Plaintiff brings his fraud claims.  The Court notes that, aside from additional details elaborating on the specific emails or communications Plaintiff claims constituted fraud, the allegations in the Second Amended Complaint are virtually the same as the fraud allegations in Plaintiff's amended complaint. Compare ECF No. 5, with SAC.  The District Court previously reviewed these common-law fraud and misrepresentation allegations, and it declined to exercise supplemental jurisdiction over such claims.  See ECF No. 81 at 20-21; Bongiovanni, 2021 WL 1193043, at *7.  Plaintiff appears to renew his common-law fraud and misrepresentation claims, and this time, to try to tie them to federal causes of action.

Plaintiff appears to assert fraud claims against all Defendants under 18 U.S.C. § 1038 (False information and hoaxes), 18 U.S.C. § 1341 (Frauds and swindles) and 18 U.S.C. § 1349

(Attempt and conspiracy).[8]  SAC ¶ 13.  "[T]he plaintiff cannot bring a civil action to enforce

[federal criminal] statutes."  Dressler v. Jefferson Cnty., W. Va., No. 18 Civ. 1126 (DLT), 2019

WL 1052285, at *2 (S.D.W. Va. Jan. 17, 2019) (collecting cases; recommending that pro se

complaint alleging claims under, inter alia, 18 U.S.C. §§ 1038, 1349 be dismissed because the

plaintiff has no standing to bring a civil suit under criminal statutes), R&R adopted, 2019 WL

1053626 (S.D.W. Va. Mar. 5, 2019); Wang v. Verizon Commc'ns Inc., No. 19 Civ. 9506 (JMF),

2021 WL 4198412, at *4 (S.D.N.Y. Sept. 15, 2021) (dismissing pro se claims for violations of

18 U.S.C. § 1341 because "wire and mail fraud statutes do not provide a private right of action"

(internal quotation marks & citations omitted)).

      Although 18 U.S.C. § 1038(b) provides for liability "in a civil action to any party

incurring expenses incident to any emergency or investigative response to that conduct, for those

expenses," it only does so for conduct that is a

> violation of Chapter 2, 10, 11B, 39, 40, 44, 111, or 113B of this title, which are,
> respectively, 18 U.S.C. § 31, et seq. (Aircraft and motor vehicles, Chapter 2), 18
> U.S.C. § 175, et seq. (Biological weapons, Chapter 10), 18 U.S.C. § 229, et seq.
> (Chemical weapons, chapter 11B), 18 U.S.C. § 831, et seq. (Explosives and
> combustibles, Chapter 39), 18 U.S.C. § 841, et seq. (Importation, manufacture,
> distribution and storage of explosive materials, Chapter 40), 18 U.S.C. § 921, et
> seq. (Firearms, Chapter 44), 18 U.S.C. § 2271, et seq. (Shipping, Chapter 111), or
> 18 U.S.C. § 2331, et seq. (Terrorism, Chapter 113B).

See Wilkins v. Deutsche Bank Nat. Tr. Co., No. 12 Civ. 145 (RH) (CAS), 2012 WL 1890456, at

*2 (N.D. Fla. Apr. 30, 2012) (alterations omitted), R&R adopted, 2012 WL 1886441 (N.D. Fla.

May 21, 2012).  Section 1038 "was designed to deal with criminal or terrorist hoaxes, and not

with the issue asserted by Plaintiff[, which is alleged] criminal activity related to a home

foreclosure."  Id. (internal quotations & citations omitted).  Plaintiff thus cannot maintain a

---

[8] Plaintiff also appears to argue in his Opposition that he brings his fraud claims under Federal
Rule of Civil Procedure 9(b), but this is a pleading standard and not a cause of action.  See Opp.
at 5.

federal-criminal-fraud claim against Defendants because these statutes either do not provide for a private right of action or Plaintiff does not meet the requirements for one.  I respectfully recommend that Plaintiff's federal-criminal-fraud claims be dismissed with prejudice and leave to replead be denied because Plaintiff cannot state a claim under these federal criminal statutes as a matter of law.

### d. Plaintiff's Supplemental State-Law Claims Should Be Dismissed For Lack Of Subject Matter Jurisdiction

A court has discretion to decline to exercise supplemental jurisdiction over remaining state claims if it has dismissed all claims over which it has original jurisdiction.  See 28 U.S.C. § 1367(c)(3); Catzin v. Thank You & Good Luck Corp., 899 F.3d 77, 85 (2d Cir. 2018).  Although this discretionary analysis should meaningfully take into account various factors such as judicial economy, convenience, fairness and comity, "in the usual case in which all federal-law claims are eliminated before trial, the balance of [these] factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."  Valencia ex rel. Franco v. Lee, 316 F.3d 299, 305 (2d Cir. 2003) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)).

The District Court previously found that complete diversity among the same parties is lacking in this case.  See ECF No. 81 at 9; Bongiovanni, 2021 WL 1193043, at *3.  The facts alleged in this regard have not changed.  As such, this Court does not have diversity jurisdiction over this action.  After previously dismissing all of Plaintiff's federal-law claims, the District Court declined to exercise supplemental jurisdiction over Plaintiff's state-law claims.  See ECF No. 81 at 20-21; Bongiovanni, 2021 WL 1193043, at *7.  The reasoning in the District Court's Memorandum and Order granting Defendants' first motions to dismiss applies equally now. Given that this Court's recommended dismissal of Plaintiff's federal claims takes place at the

pleading stage of this litigation, declining jurisdiction over the state claims would continue to

serve the principles of judicial economy, convenience and fairness.  See 28 U.S.C. § 1367(c)(3);

Villanueva v. City of New York, No. 08 Civ. 8793 (LBS), 2010 WL 1654162, at *11 (S.D.N.Y.

Apr. 14, 2010) (finding it inappropriate to exercise jurisdiction over remaining state-law claims

after dismissing the plaintiff's federal claims for failure to state a claim).  This Court proposes

that the District Court again decline to exercise supplemental jurisdiction over the state-law

claims for the purposes of "maintain[ing] consistency."  See Devilla, 245 F.3d at 197.  In light of

the foregoing, I respectfully recommend that Plaintiff's supplemental state-law claims should be

dismissed for lack of subject matter jurisdiction.

## IV.    CONCLUSION

For the foregoing reasons, this Court respectfully recommends that the Court grant

Defendants' motions to dismiss as to the federal claims and dismiss the state-law claims for lack

of subject matter jurisdiction.  This Court respectfully recommends that Plaintiff be granted leave

to replead only his FCRA claim within thirty days of the District Court's adoption of this Report

and Recommendation, if it is adopted, if Plaintiff can cure his pleading deficiencies.  This Court

respectfully recommends denying Plaintiff leave to amend his federal-criminal-law claims as

amendment would be futile.

## V.    OBJECTIONS

A copy of this Report and Recommendation is being filed on ECF.  The Court will also

mail it to Plaintiff at 1370 Richmond Rd., Staten Island, NY 10304.  Any written objections to

this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14)

days of service of this report.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b).  Any

requests for an extension of time for filing objections must be directed to the District Judge

assigned to this action prior to the expiration of the fourteen (14)-day period for filing objections.

Failure to file objections within fourteen (14) days will preclude further review of this Report

and Recommendation either by the District Court or the Court of Appeals.  See Thomas v. Arn,

474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive

right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to

object timely to a magistrate [judge]'s report operates as a waiver of any further judicial review

of the magistrate [judge]'s decision.").


Dated:  Brooklyn, New York
        August 14, 2022


                                        *Vera M. Scanlon*
                                _____
                                    VERA M. SCANLON
                                 United States Magistrate Judge